Mabel L. HARMON, as next friend of Shineka Harmon, a minor, Leonard Harmon and Mabel L. Harmon, Individually, Plaintiffs,

v.

Daniel E. EUDAILY, M. D. and Beebe Hospital of Sussex County Incorporated, a Delaware Corporation, Defendants.

Superior Court of Delaware,
New Castle.

Submitted March 30, 1979.

Decided Sept. 5, 1979.

Louis L. Redding, and Leonard L. Williams, Wilmington, for plaintiffs.

John J. Schmittinger, Schmittinger & Rodriguez, Dover, for defendant Eudaily.

O'HARA, Judge.

On September 22, 1978, a complaint was filed against defendants alleging negligent conduct on the part of defendant Eudaily, a physician, occurring on September 23, 1976. On the latter date Eudaily was a resident of the State of Delaware, licensed to practice medicine in this State maintaining an office in Georgetown, Delaware. Subsequently, and prior to the filing of the complaint in this action, defendant Eudaily left the State of Delaware and now resides and practices medicine in the State of Montana. Service was effected on Eudaily pursuant to 10 Del.C. § 3104, Delaware's newly enacted (effective July 11, 1978) Long-Arm Statute, which provides for personal jurisdiction to be obtained in this State over non-residents whose acts cause injury within the State.

Defendant moves to dismiss, contending that although he was a resident when the alleged wrongful acts were committed, he became a nonresident thereafter, and before 10 Del.C. § 3104 was enacted, and thus is not subject to the provisions of the new Long-Arm Statute. Within this contention are two arguments. First, that the new statute affects "substantive rights" and thus cannot be applied retroactively to a cause of action arising before its passage, and second, that the statute was not intended to apply to individuals who were residents of Delaware at the time the cause of action arose, even if such individuals relinquished their Delaware residency prior to the filing of a complaint. Defendant does not contest the fact that § 3104 meets due process standards, but contends that the limits of the statute must be observed.

When *in personam* jurisdiction is challenged by a motion to dismiss, the plaintiff has the burden to show a basis for long-arm jurisdiction. *Simpson v. Thiele*, D.Del., 344 F.Supp. 7 (1972). However, this burden is met by a threshold *prima facie* showing that jurisdiction is conferred by the statute, *Cohan v. Municipal Leasing Systems, Inc.*, N.D.Ill., 379 F.Supp. 1022 (1974); *Socialist Workers Party v. Attorney General of United States*, S.D.N.Y., 375 F.Supp. 318 (1974). Furthermore, the record is construed most strongly against the moving party. *Ghazoul v. International Management Services, Inc.*, S.D.N.Y., 398 F.Supp. 307 (1975). In this case the allegations of the complaint are assumed to be true, leaving only the legal issues.

## RETROACTIVE APPLICATION

The new Long-Arm Statute is silent as to whether it can be applied to existing causes of action. Delaware's statute is similar to those enacted by other states in response to the expansion of *in personam* jurisdiction which commenced with the landmark decision in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); See 13 U.L.A. *Interstate and International Procedure Act* § 1.03 (1975). A number of Courts have dealt with the question of retroactive jurisdiction. One commentator summarized the case law as it then existed by saying:

"Cases involving retroactive expansion of the bases of judicial jurisdiction over persons have produced inconsistent results although the courts have employed the same rules in dealing with similar statutes. Retroactivity has been sanctioned on the ground that jurisdictional provisions involve only modes of procedure in which there can be no vested rights. By contrast, prospectivity has often been required to avoid alteration of

'substantive' or 'vested' rights and to obviate the apparent anomalous retroactive imputation of consent and agency. Few courts have considered reliance on prior law—the most significant barrier to retroactivity." Note, *Retroactive Expansion of State Court Jurisdiction over Persons*, 63 Colum.L.Rev. 1105 (1963).

Prospectivity has been required by a dwindling number of states. See, e. g., *Chrischilles v. Griswold*, 200 Iowa 453, 150 N.W.2d 94 (1967); *Mladinich v. Kohn*, Miss. Supr., 186 So.2d 481 (1966); *Heberle v. P.R.O. Liquidating Co.*, Fla.App., 186 So.2d 280 (1966); *State v. Jensen*, Mo.Supr., 363 S.W.2d 666 (1963); *Cassan v. Fern*, 33 N.J. Super. 96, 109 A.2d 482 (1954); *Amos v. Bowers*, 121 Ga.App. 801, 175 S.E.2d 877 (1970). A case heavily relied upon by defendant, *Gillioz v. Kincannon*, 213 Ark. 1010, 214 S.W.2d 212 (1948), has been limited strictly to its peculiar facts[1] in subsequent decisions. See *Harrison v. Matthews*, 235 Ark. 915, 362 S.W.2d 704 (1962), and *Safeway Stores, Inc. v. Shwayder Bros., Inc.*, 238 Ark. 768, 384 S.W.2d 473 (1964). Both of these cases upheld the retroactive application of long-arm statutes akin to our own. Another case cited by defendant, *Nevins v. Revlon, Inc.*, 23 Conn.Sup. 314, 182 A.2d 634 (1962), was overruled by *Carvette v. Marion Power Shovel Co.*, 157 Conn. 92, 249 A.2d 58 (1968). The District Court decision in *Clews v. Stiles*, D.N.M., 181 F.Supp. 172 (1960), from which defendant quotes, was reversed on appeal, *Clews v. Stiles*, 10th Cir., 303 F.2d 290 (1960).

Among the states which have adopted long-arm legislation not predicated solely on fictionalized "consent," the overwhelming weight of authority favors retrospective construction. *Diamond Crystal Salt Co. v. P. J. Ritter Co.*, 1st Cir., 419 F.2d 147 (1969); *Egeria, Societa di Navigazione Per Azioni v. Orinoco Mining Co.*, D.Md., 360 F.Supp. 997 (1973); *Coreil v. Pearson*, W.D.La., 242 F.Supp. 802 (1965); *Chovan v. E. I. DuPont de Nemours & Co.*, E.D.Mich., 217 F.Supp. 808 (1963); *Hoen v. District Court*, 152 Colo. 451, 412 P.2d 428, 19 A.L.R.3d 131 (1966); *Gordon v. Granstedt*, 54 Haw. 597, 513 P.2d 165 (1973) (California law); *Nelson v. Miller*, 11 Ill.2d 378, 143 N.E.2d 673 (1957); *Jones v. Garrett*, 192 Kan. 109, 386 P.2d 194 (1963); *Kagan v. United Vacuum Appliance Corp.*, 357 Mass. 680, 260 N.E.2d 208 (1970); *Hunt v. Nevada State Bank*, 285 Minn. 77, 172 N.W.2d 292 (1969), cert. denied, 397 U.S. 1010, 90 S.Ct. 1239, 25 L.Ed.2d 423 (1970); *State v. District Ct.*, 148 Mont. 22, 417 P.2d 109 (1966); *Kinchla v. Baumner*, 114 N.H. 818, 330 A.2d 112 (1974); *Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965), cert. denied, 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1965); *Kilbreath v. Rudy*, 16 Ohio St.2d 70, 242 N.E.2d 658 (1968); *Walke v. Dallas, Inc.*, 209 Va. 32, 161 S.E.2d 722 (1968); *Tellier v. Edwards*, 56 Wash.2d 652, 354 P.2d 925 (1960). See also *Myers v. Mooney Aircraft, Inc.*, 429 Pa. 177, 240 A.2d 505 (1968).

Defendant argues that Delaware adheres to the minority (non-retroactive) view by virtue of *Monacelli v. Grimes*, Del.Supr., 99 A.2d 255 (1953). The *Monacelli* case involved a revision of the Delaware nonresident motorist statute in the course of the 1953 recodification of the State's laws. The change permitted the State to give notice to nonresident defendants prior to substituted service on the Secretary of State, whereas the old law had required completed service on the Secretary of State prior to notification of the defendant. After the effective date of the 1953 Code, the plaintiff filed an action against a nonresident motorist pursuant to the 1935 Code procedure. The cause of action had arisen prior to the effective date of the new Code. It should be emphasized that *Monacelli* presented an unusual situation in that the *defendant* sought a retroactive application which would *extinguish* jurisdiction. Expressing doubt as to whether the change in notice procedures would satisfy due process, the Court de-

---

1. *Gillioz* involved a statute which deemed the "doing of business" in state to be (implied) consent to service. Section 4, which made the Act applicable retroactively, was held to be an unconstitutional violation of due process.

clined to give the new statute retrospective operation and imperil plaintiff's existing cause of action.

Defendant contends that *Monacelli* is binding precedent in that the provisions of 10 Del.C. § 3104 "track almost identically" the language of 10 Del.C. § 3112 considered in *Monacelli*. A close comparison reveals significant distinctions between the two statutes. While subsection (b) of § 3104 does incorporate the legal fiction of implied consent, on which § 3112(a) relies for jurisdiction, it also contains a sentence which does not appear at all in § 3112:

"The following acts constitute legal presence within the state . . ." § 3104(b).

This provision clearly refers to subsection (c) of § 3104, not found in § 3112, which bases jurisdiction on enumerated acts or transactions within the State. This is consistent with the modern trend in draftsmanship, as reflected in "single act" statutes. The subsection essentially copies from § 1.03 of the Interstate and International Procedure Act, found in 13 U.L.A. (1975).

The distinction between "implied consent" and "single act" statutes is a critical one, for it has been utilized to hold the latter type of statutes applicable retrospectively despite precedent requiring prospective application of implied consent statutes.

"Only if jurisdiction in a case such as this is regarded as founded on a bargain between the State and the non-resident, whereby consent to be sued here is given as the price of a privilege conferred, can it be thought that the exercise of jurisdiction is unfair because the consent occurred before the terms of the bargain were known." *Nelson v. Miller, supra,* at 676.

See the thorough discussion in *Adams Dairy Co. v. National Dairy Products Corp.,* W.D. Mo., 293 F.Supp. 1135 (1968); Annot., 19 A.L.R.3d 138 (1968). The notion of implied consent was at the very heart of the *Monacelli* decision, whereas the present case involves jurisdiction based on the alleged acts of negligence.

■ The fundamental rationale for prospective application of statutes is the tendency of retroactive legislation to undermine the expectations of persons acting in reliance upon the law as it existed at the time of their conduct.

"Retrospective application of such a statute creates a problem only if that application operates unfairly against a litigant who justifiably acted in reliance on some provision of the prior law." *Id.*

Had the defendant been a nonresident of Delaware at the time he allegedly committed the acts complained of, he could have claimed such reliance. For example, the non-resident motorist defendant in *Monacelli* was entitled to rely on the notice provisions as they existed under the 1935 Code. But here, the defendant was a Delaware resident subject to personal service by this State at the time this cause of action arose. He cannot reasonably have expected immunity from service then, and cannot reasonably claim an impairment of substantive rights by a retrospective application of the statute.

■ While statutes affecting substantive rights ordinarily operate prospectively only, *DiStefano v. Lamborn,* Del.Super., 83 A.2d 300 (1951), an exception to the strict general rule against retroactive application is made in the case of procedural statutes which do not destroy or impair a right. *Bowing v. Delaware Rayon Co.,* Del.Super., 188 A. 769 (1937). In addition, retroactive application of § 3104 is consistent with the policy implicit in the statute of extending the jurisdiction of this State to nonresident tortfeasors.

No legitimate ground for extinguishing this cause of action remains, and thus § 3104 can be applied retroactively to this defendant.

### APPLICATION TO RESIDENTS AT TIME OF ACT

With respect to the second issue, § 3104 provides no clear answer.

"(b) . . . *Any person* who commits any of the acts hereinafter enumerated . . . is deemed thereby to have ap-

pointed and constituted the Secretary of State of this State his agent for the acceptance of legal process in any civil action against *such nonresident person* arising from the following enumerated acts . . ." (Emphasis added).

"(c) As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any *nonresident*, . . . who . . ." (Emphasis added).

While "such" seems to refer back to "person", one might well ask why "nonresident" modifies "person" with respect to "service", whereas "any" precedes person where the commission of acts is discussed (and "nonresident" is conspicuously absent). Suffice to say that the legislative intent, if the problem was considered at all, is not disclosed by the terms of the statute.

The General Assembly did, as defendant points out, make 10 Del.C. § 3112, the nonresident motorist Long-Arm Statute, applicable to residents who depart the State subsequent to an accident or collision by adding § 3113. Defendant argues that § 3112 and, thus, § 3104, must be interpreted to exclude such person. This inference rests on the unsubstantiated assumption that § 3113 was a change (not a clarification), as well as the assertion, rejected above, that "§ 3104 tracks § 3112 virtually word for word and it was intended to be used and interpreted in the same manner."

As plaintiff points out, the rule that statutes in derogation of the common law must be strictly construed, *McLean Trucking Co. v. Stover*, Del.Super., 87 A.2d 879 (1951), has been mitigated by the admonition in *Lightburn v. Delaware Power & Light Co.*, Del.Supr., 158 A.2d 919 (1960), that the intention of the legislature must be given effect. See *Kohanovich v. Youree*, Del.Supr., 147 A.2d 655 (1959). See also *Snyder v. Beam*, Del.Super., 380 A.2d 1374 (1977). A liberal definition has been given

to 8 Del.C. § 382, the corporate Long-Arm Statute. *Nacci v. Volkswagen of America Inc.*, Del.Super., 297 A.2d 638 (1972); *Perry v. American Motors Corp.*, Del.Super., 353 A.2d 589 (1976). In general, remedial statutes relating to procedure are given a liberal construction. Sands, *Sutherland Statutory Construction*, § 67.02 (4th ed., 1974). The obvious intent of § 3104 is to afford Delawareans a means of redress against persons not subject to personal service within the State. To exempt those who depart from the State, after the alleged commission of a tort, from the reach of the statute, in the absence of language suggesting this intent, would subvert this policy. Such a construction would create a gaping loophole enabling a wrongdoer to escape Delaware jurisdiction by fleeing the State.

There are no Delaware cases considering the applicability of § 3104 or related statutes to persons who were Delaware residents at the time the claim arose. Among the states facing this question there is no clear consensus. A number of states have dealt with the problem by drafting their statutes to include persons who subsequently become nonresidents, see *Sussman v. Yaffee*, 443 Pa. 12, 275 A.2d 364 (1971) and *Hoen v. District Court, supra*, while Georgia defines a nonresident as "one not residing in Georgia at the time a claim arises." *Parham v. Edwards*, S.D.Ga., 346 F.Supp. 968 (1972), aff'd., 5th Cir., 470 F.2d 1000 (1973).

In the absence of such provisions, the courts are not in agreement as to the time as of which nonresidency is to be determined. Annot., 24 A.L.R.3d 532, 569 (1969).[2] In *Genet v. Smith*, Okl., 400 P.2d 161 (1965), the Court in a 5–2 decision, held the Oklahoma long-arm statute inapplicable to an official who was alleged to have wrongfully paid out state funds while a resident. However, the Oklahoma statute applied to "[a]ny person . . . who is a nonresident of this State and who does any of the acts hereinafter enumerated . . .,"

---

2. Defendant cites the annotation found at 53 A.L.R.2d 1164 (1957) dealing with substituted service under nonresident motorist long-arm statutes. Although the text states that according to the majority of cases, residents removing

from a State after an accident are not regarded as "nonresidents" and not subject to constructive service, the supplement reveals a number of cases to the contrary.

so that the result is not surprising. Similarly, an Iowa statute which conferred jurisdiction "[i]f a nonresident person . . . commits a tort in whole or in part in Iowa . . ." was held not to apply to defendants who were residents at the time of commission of the alleged tort. *Fagan v. Fletcher*, 257 Iowa 449, 133 N.W.2d 116 (1965).

On the other hand, the statute, N.Y.Civ. Prac. Law (McKinney) § 302(c), construed in *State v. Davies*, 24 A.D.2d 240, 265 N.Y. S.2d 358 (1965), aff'd., Ct.App., 18 N.Y.2d 950, 277 N.Y.S.2d 146, 223 N.E.2d 570 (1966), closely resembles the portion of § 3104(c) quoted above ("nondomiciliary" is substituted for "nonresident"). The Court, rejecting the notion that the legislature could have intended a "gap" in the statute, held the statute applicable to the defendant, who was a domiciliary at the time of the alleged act but not at the time of service. The relevant portion of the statute, Conn.Gen.Stat. § 52–59b, considered in *University of Bridgeport v. Cassidy*, 31 Conn. Sup. 429, 333 A.2d 407 (1975), was identical to the quoted portion of our § 3104(c). The Court said:

"This review of the decisions in other jurisdictions illustrates that a finding of jurisdiction would be entirely compatible with the wording of our statute. The paramount consideration is, or course, whether the legislature intended this result.

"In these times, when travel is fast and distance scarcely separates, long-arm statutes should be liberally construed. A Connecticut citizen should not be required to travel to a foreign state merely because his defendant has done so after allegedly committing, while a resident, a tortious act within Connecticut. The New York rule contains language essentially similar to the broad language of our statute, and the court thinks that the latter permits the service that was made here." *Id.* at 410.

The same result was reached in *Jackson v. Keske*, 20 Ohio St.2d 89, 253 N.E.2d 778 (1969), despite long-arm statutes which

defined "person" as "nonresident". The long-arm acts authorized the Ohio Courts to exercise personal jurisdiction over a nonresident as to a cause of action arising from the nonresident's causing tortious injury by an act in the State. The Court's reading of the statutes indicated that,

". . . their tenor is insistent that the circumstances at the time when jurisdiction *in personam* is sought to be obtained, not when the cause of action arose, actuate their utility." *Id.* at 779.

The reasoning of the Ohio Supreme Court is persuasive:

"Our statutes authorize jurisdiction over a nonresident who commits a tortious act in Ohio on the grounds that he acted in Ohio. Such person has far less contact with this state than had the appellees in the instant case, who not only acted here but also resided here at the time they committed the alleged tort. We will not, therefore, indulge the inference that the General Assembly intended to confer upon our courts the authority to assume jurisdiction *in personam* over a tortfeasor with less contacts with Ohio than the appellees, but not over the latter." *Id.*

The decision in *Jackson v. Keske, supra*, was followed in *Conley v. Sousa*, Ky.Supr., 554 S.W.2d 87 (1977), (Kentucky having adopted the Ohio statute) where the Court said:

"It is apparent that the legislature intended to permit the courts of Kentucky to exercise personal jurisdiction over those who acted in the Commonwealth so as to have caused injury here and who were not answerable in our courts because of their nonresidence. It is obvious that nonresidence is not disease at the time of the act and the injury. It becomes a disease needing legislative cure only after an action is commenced and summons cannot be served because of it." *Id.* at 88.

On the strength of such precedent, and with regard to the remedial aims of § 3104, the term "nonresident" is here held to refer to the status of the person at the

time service is sought to be obtained. The only construction consistent with the policy implicit in the act is one permitting jurisdiction over nonresidents who meet one of the jurisdictional tests, regardless of whether such persons resided in Delaware at the time the cause of action arose.

The Long-Arm Statute can, therefore, under the circumstances presented, be applied to a cause of action which arose prior to its passage, and to a defendant who departed the State after the alleged tort. Defendant's motion must be denied.

IT IS SO ORDERED.