**PLUMMER & CO. REALTORS, a Delaware corporation, Plaintiff,**

v.

**Adolph CRISAFI and Jean Crisafi, his wife, and Gallo Realty, Inc., a Delaware corporation, and Elizabeth Gallo, Defendants.**

**and**

**ADOLPH & JEAN CORPORATION, a Delaware corporation, Defendant and Third–Party Plaintiff,**

v.

**Bruce E. PLUMMER, Third–Party Defendant.**

Superior Court of Delaware, Sussex County.

Submitted: Oct. 6, 1986.
Decided: Jan. 13, 1987.

John C. Phillips, Jr. of Phillips & Snyder, P.A. Wilmington, for defendants.

Richard F. Stokes of Tunnell & Raysor, Georgetown, for plaintiff and third-party defendant.

## OPINION

CHANDLER, Judge.

This lawsuit involves allegations of breach of contract, tortious interference

and misrepresentation against Adolph and Jean Corporation ("Adolph and Jean"), a Delaware corporation, Adolph Crisafi and Jean Crisafi, husband and wife who reside in Arizona, Gallo Realty, Inc., a Delaware corporation, and Elizabeth Gallo, an individual who resides in Delaware. Before the Court is the defendants' motion to dismiss the complaint as to Adolph Crisafi and Jean Crisafi for lack of personal jurisdiction, insufficiency of process and insufficiency of service of process pursuant to Superior Court Civil Rule 12(b).[1] For the reasons stated herein, the motion to dismiss is denied.

## I. THE COMPLAINT

The plaintiff, Plummer & Co., Realtors ("Plummer"), is a Delaware corporation engaged in the real estate business in Sussex County. Its amended complaint is in four counts. The first count alleges that Adolph and Jean breached its contract with Plummer for an exclusive listing of property owned by Adolph and Jean in Sussex County. The second count alleges that Adolph Crisafi and Jean Crisafi tortiously interfered with the contractual relationship of Plummer and Adolph and Jean and misrepresented the authority of Adolph and Jean to enter the contract when its charter was voided. The third and fourth counts allege tortious interference by Gallo Realty and Elizabeth Gallo and are not relevant to this decision.

## II. FACTUAL BACKGROUND

The facts of this case are as follows. Adolph Crisafi and Jean Crisafi are residents of Sun City, Arizona. The Crisafis are controlling shareholders and officers of Adolph and Jean Corporation, a Delaware corporation whose address is listed in Millsboro. Adolph and Jean Corporation owned the property that is the subject of this suit, a parcel of land on Route 22 near Rehoboth Beach.

On July 22, 1983, Plummer and Adolph and Jean entered into a written contract, an exclusive listing agreement, whereby Plummer had the exclusive right to find a buyer for the Route 22 property, listed at a sales price of $500,000, for a six percent commission. The agreement, however, reserved the right of Adolph and Jean Corporation to procure a buyer through its own efforts and not pay a commission to Plummer. The document was signed in Sussex County by Adolph Crisafi in his capacity as president of Adolph and Jean Corporation. Adolph Crisafi was empowered by Jean Crisafi, who remained in Arizona, with a power of attorney dated April 18, 1983 to transact business on her behalf relative to properties jointly owned in Delaware and Philadelphia.

Eight hours after executing the agreement, Adolph Crisafi notified the plaintiff that he had signed a contract for the purchase and sale of the same property with a buyer procured by Gallo Realty. This buyer had previously made offers to buy the property that had been rejected, but on July 22 offered to pay the full purchase price of $500,000.

On December 5, 1983 the plaintiff filed its original complaint against Adolph and Jean and the individual defendants, seeking payment of its six percent commission. On March 12, 1984 Adolph and Jean sold the property that is the subject of this suit to Route 22 Associates, taking back a purchase money mortgage of $450,000. On October 1, 1984 Adolph and Jean assigned this mortgage to Adolph Crisafi and Jean Crisafi, providing them with annual mortgage payments of $60,245.45.

## III. THE LAW

When personal jurisdiction is challenged by a motion to dismiss, the plaintiff has the burden to show a basis for the Court's jurisdiction over the nonresident defendant. *ALTECH Industries, Inc. v. Al Tech Specialty Steel Corp.*, D.Del., 542 F.Supp. 53 (1982); *Mid–Atlantic Machine & Fabric, Inc. v. Chesapeake Shipbuilding, Inc.*, Del.Super., 492 A.2d 250 (1985).

---

1. Defendants have not presented any arguments in support of their claims of insufficiency of process and insufficiency of service of process.

The Court will accordingly treat these defenses as waived and decide the motion on the question of lack of personal jurisdiction only.

However, this burden is met by a *prima facie* showing based on the pleadings and/or affidavits that jurisdiction is conferred by the Delaware long-arm statute, 10 *Del.C.* § 3104. *Harmon v. Eudaily*, Del.Super., 407 A.2d 232, 233 (1979), *aff'd*, Del.Supr., 420 A.2d 1175 (1980).

## A. *The "Transacting Business" Issue*

10 *Del.C.* § 3104, the statute authorizing personal jurisdiction over nonresidents, provides in part:

> (c) As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or his personal representative, who in person or through an agent:

> (1) Transacts any business or performs any character of work or service in the State;

> (2) Contracts to supply services or things in this State;

> (3) Causes tortious injury in the State by an act or omission in this State;

> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;

> (5) Has an interest in, uses or possesses real property in the State; or

> (6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

> \* \* \*

> (j) When jurisdiction over a person is based solely upon this section, only a cause of action arising from any act enumerated in this section may be asserted against him.

In this case, the plaintiff seeks to premise jurisdiction on subsections 3104(c)(1), (3) and (5). In the first instance, the plaintiff contends that Adolph Crisafi and Jean Crisafi transacted business on their own behalves in Delaware, thus subjecting them to personal jurisdiction on the basis of subsection (c)(1). It argues that the Adolph and Jean Corporation is merely a shell and that its interests and activities are the same as those of Adolph Crisafi and Jean Crisafi, citing in support of this assertion the fact that the Crisafis currently enjoy the direct economic benefits of the transaction through the assignment of the purchase money mortgage and the fact that the corporation's charter was voided for nonpayment of franchise taxes at the time the parties entered the contract. Viewed in this light, so the argument goes, the Crisafis were conducting business on their own behalves.

■■■ In Delaware, however, forfeiture of a corporate charter for inadvertent failure to pay franchise taxes does not render personally liable the officer who made the contract for the corporation without knowledge of that forfeiture. *Frederic G. Krapf & Son, Inc. v. Gorson*, Del.Supr., 243 A.2d 713 (1968). By analogy, where the law protects an officer from personal liability while acting on behalf of a corporation, it will not base personal jurisdiction over the officer on those same acts. (*See Marine Midland Bank, N.A. v. Miller*, 2d Cir., 664 F.2d 899, 902 (1981) and discussion of fiduciary shield doctrine *infra.* pp. 1246–1247.) In any event, the subsequent reinstatement of a corporate charter validates the corporate acts taken after the charter was forfeited. *Gorson*, 243 A.2d at 715. Here, the plaintiff in its amended complaint alleges that a Certificate of Revival was filed for Adolph and Jean Corporation on January 13, 1984, thus validating the acts taken by Adolph Crisafi on behalf of the corporation. Plaintiff's Amended Complaint at 2, *Plummer & Co. v. Crisafi*, Del.Super., C.A. No. 83C–DE5 (Docket Item No. 23). Therefore, the fact that the charter was voided at the time of the transaction in question is insufficient to support the plaintiff's claim that the Crisafis were transacting business in Delaware in their individual

capacities. Nevertheless, the plaintiff's assertion that Adolph and Jean is a mere shell for its owners merits further discussion.

## B. *The Fiduciary Shield Doctrine*

 The Crisafis contend that they were transacting business in Delaware solely as fiduciaries of a corporation and that personal jurisdiction cannot be premised on such actions, but rather must be established by acts taken by and for them in their capacities as individuals. *Club Assistance Program, Inc. v. Zukerman,* N.D. Ill., 594 F.Supp. 341, 345 (1984); *Hurletron Whittier, Inc. v. Barda,* Ill.App., 82 Ill. App.3d 443, 37 Ill.Dec. 838, 402 N.E.2d 840, 843 (1980); *Mergenthaler Linotype Co. v. Leonard Storch Enterprises, Inc.,* Ill.App., 66 Ill.App.3d 789, 23 Ill.Dec. 352, 383 N.E. 2d 1379, 1385 (1978). Moreover, they argue that evidence of the mortgage assignment should not be considered in the present analysis since it took place after the time service was sought to be obtained, citing *Harmon v. Eudaily,* 407 A.2d at 232, for the proposition that the status of an individual for the purposes of § 3104 is determined at the time of service of process.

There are no Delaware cases directly dealing with the issue of jurisdiction over an individual defendant acting in a fiduciary capacity. Since, 10 *Del.C.* § 3104(c) is based on the Illinois long-arm statute, *Ill. Ann.Stat.* ch. 110, § 2–209 (Smith–Hurd 1983), however, Delaware courts have looked to the legislative and decisional law of Illinois in interpreting our own statute. *O'Neal v. Huxley Development Corp.,* D.Del., 558 F.Supp. 462 (1983); *Wilmington Supply Co. v. Worth Plumbing & Heating, Inc.,* D.Del., 505 F.Supp. 777 (1980). Illinois courts have adopted the defense, known as the fiduciary shield doctrine, raised by defendants in this case, to insulate employees and officers of a corporation from being sued in the courts of a jurisdiction where their sole contacts have

been on behalf of their corporation. *See, e.g., State Security Insurance Co. v. Frank B. Hall & Co.,* N.D.Ill., 530 F.Supp. 94, 97 (1981).

The fiduciary shield doctrine, as adopted by the Illinois courts, was summarized by the United States Court of Appeals for the Second Circuit in *Marine Midland Bank, N.A. v. Miller*:

> The teachings of the courts of this Circuit and of New York is that there is a dichotomy between the principles governing the personal liability of corporate agents for torts committed in their corporate roles and the principles governing the amenability of such agents to personal jurisdiction solely on the basis of those acts. [Citing cases.] These cases have recognized that if an individual has contact with a particular state only by virtue of his acts as a fiduciary of the corporation, he may be shielded from the exercise, by that state, of jurisdiction over him personally on the basis of that conduct. Thus, his conduct, although it may subject him to personal liability, may not form the predicate for the exercise of jurisdiction over him as an individual. The underpinning of this fiduciary shield doctrine is the notion that it is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer.

664 F.2d 899, 902 (1981). The Court in *Marine Midland,* however, recognized an exception to the fiduciary shield doctrine where the corporation is a mere shell for its owner. *Id.* at 903. In that circumstance, the employee-owner's actions may be viewed as having been taken on his own behalf and it would not be fair to allow the owner to hide behind the fiduciary shield.[2]

As the term "fiduciary shield" suggests, this is an equitable doctrine. It should be followed not [ ] mechanically but with a sound exercise of discretion. If, for

---

**2.** The court in *Marine Midland* noted that the fiduciary shield doctrine is not a constitutional principle, but is rather a doctrine of judicial inference as to the intended scope of the long-arm statute. 664 F.2d at 902 n. 3.

example, the [corporation] lacked sufficient assets to respond or if it were a shell utilized by an individual defendant for his own benefit, the balance of fairness might be tipped and jurisdiction over the individual might lie.

*Bulova Watch Co. v. K. Hattori & Co.,* E.D.N.Y., 508 F.Supp. 1322, 1348 (1981).

To determine whether the corporation is a real or shell entity, the court in *Marine Midland* proposed a more liberal standard than the one normally applied in other contexts for piercing the corporate veil. 664 F.2d at 903. That test requires a showing not only that the corporation is a shell, but that it also was used to commit a fraud. *Id.* at 903. In determining whether to disregard the corporate entity for the personal jurisdiction over an employee-owner, the test is merely whether the employee-owner is really acting on behalf of another or is acting on behalf of his shell entity for his own benefit. *Id.* at 903; *see also State Security,* 530 F.Supp. at 98.

The question in this case, therefore, is whether Adolph and Jean Corporation is a mere shell for Adolph Crisafi and Jean Crisafi. Keeping in mind the established rule that, on a motion to dismiss for lack of personal jurisdiction, the record is viewed in a light most favorable to the nonmoving party, the allegations of the complaint are accepted as true and all reasonable inferences are considered most strongly in favor of plaintiff, *see Greenly v. Davis,* Del. Supr., 486 A.2d 669, 670 (1984), *Harmon v. Eudaily,* 407 A.2d at 233, I must analyze the facts of this particular case to determine whether it would be fair for this Court to exercise personal jurisdiction over Adolph Crisafi and Jean Crisafi.

The parties have not supplied affidavits on the question of jurisdiction, but have conducted a partial discovery in preparation for trial.[3] Nevertheless, the plaintiff has alleged in its amended complaint that the individual defendants are the controlling shareholders of Adolph and Jean Corporation. The record is devoid of any reference to the nature of the business engaged in by the corporation, other than its having an address listed as R.D. # 6, Box 285, Millsboro, Delaware 19966; the number of employees of the corporation, other than its president and secretary (Adolph Crisafi and Jean Crisafi, respectively); or its assets, other than the property which is the subject of this suit and the purchase money mortgage received upon its sale. That mortgage was subsequently assigned to the Crisafis in consideration for the return or cancellation of the stock in Adolph and Jean Corporation previously issued to the Crisafis. Defendants' Response to Plaintiff's Interrogatories at 2, *Plummer & Co. v. Crisafi,* Del.Super., C.A. No. 83C–DE5 (Docket Item No. 41).

The defendants maintain that this assignment is irrelevant to the question of jurisdiction since it occurred after the initiation of the suit, citing *Harmon v. Eudaily.* *Harmon,* however, dealt with the question whether the term "nonresident" under the statute referred to the status of the person at the time service was sought to be obtained or at the time the cause of action arose. 407 A.2d at 232. It is not persuasive authority on the question whether a corporation is merely a shell for its owners. This action taken by the individual defendants and the corporation after the initiation of this suit strongly supports the reasonable inferences drawn from the record that the corporation was merely a shell for the Crisafis and that they controlled its actions for their own benefit. Moreover, it indicates that the corporation now lacks sufficient assets with which to respond to this suit.[4] Therefore I hold that the individual defendants may not avail themselves of the fiduciary shield defense and are subject to the personal jurisdiction

---

3. Defendant Adolph Crisafi has objected to appearing in Delaware for deposition and has moved for a protective order which is currently before the court.

4. The conclusions I have drawn, based on the record, relate only to Plummer's *prima facie* case. Plaintiff must still prove personal jurisdiction over Adolph Crisafi and Jean Crisafi by a preponderance of the evidence at trial. *See CutCo Industries, Inc. v. Naughton,* 2nd Cir., 806 F.2d 361 (1986).

of this Court under § 3104(c)(1) for having transacted business in Delaware, Adolph Crisafi in person and Jean Crisafi through her agent Adolph Crisafi. Having so decided, it is unnecessary to discuss plaintiff's additional arguments for personal jurisdiction based on subsections (c)(3) and (c)(5).

## C. *Due Process Considerations*

■ It is still necessary, however, to decide whether the exercise of personal jurisdiction over the Crisafis comports with due process. *See Waters v. Deutz Corp.,* Del. Super., 460 A.2d 1332 (1983), *aff'd,* Del. Supr., 479 A.2d 273 (1984). The test, as articulated in *International Shoe v. Washington,* is whether the defendant has sufficient minimum contacts with the forum state that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)). The United States Supreme Court more recently has expounded on this test in *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The relevant factors in deciding whether the relationship between defendant and the forum is such that it is fair or reasonable to require the party to defend the particular suit which is brought there include: the burden on the defendant; the state's interest in adjudicating the dispute; the plaintiff's interest in securing convenient and effective relief, insofar as that interest is not adequately protected by the plaintiff's power to choose the forum; and the interstate judicial system's interest in obtaining the most efficient resolution of controversies. *Id.* at 292, 100 S.Ct. at 564. *See also LaNUOVA D & B, S.p.A. v. Bowe Co., Inc.,* Del.Supr., 513 A.2d 764, 769–70 (1986).

In applying these factors to the facts of this case, I am satisfied that, although there is some burden to the Crisafis in being required to appear in Delaware, this burden is outweighed by several factors. First, the state has a compelling interest in deciding the dispute because all the parties, with the exception of the Crisafis, are ei-ther Delaware residents or Delaware corporations, the property which is the subject of the suit is located in Delaware and the case involves Delaware real estate practices. Secondly, although the plaintiff could have chosen Arizona as his forum, it would be much less convenient to adjudicate the dispute there. The cause of action having arisen in Delaware, Delaware law would apply and all the witnesses and parties, except the Crisafis, are in Delaware. Thirdly, forcing the plaintiff to bring his suit in Arizona would undermine the interstate judicial system's interest in obtaining an efficient resolution of controversies for the very reasons stated above. Finally, the Crisafis' conduct within and connection to this state was such that they should have reasonably anticipated being haled into court here. *See Woodson,* 444 U.S. at 297, 100 S.Ct. at 567. Through their corporate shell they owned property in Delaware, contracted for its listing and sale in Delaware and continue to receive directly revenues in the form of annual mortgage payments from that property. Such purposeful activity provides clear notice that they are subject to suit here. *See Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958); *LaNUOVA D & B, S.p.A. v. Bowe Co., Inc.,* 513 A.2d at 764.

Since the imposition of personal jurisdiction over Adolph and Jean Crisafi pursuant to § 3104(c)(1) comports with due process, the motion to dismiss is denied.

An order consistent with this Opinion has been entered.

## ORDER

For the reasons set forth in this Court's Opinion entered in this case on this date, it is

ORDERED that defendants' motion to dismiss the complaint as to Adolph Crisafi and Jean Crisafi for lack of personal jurisdiction is hereby DENIED.