# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DANIEL C. MURPHY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | C.A. No. N16C-12-433 WCC CCLD |
| | ) | |
| PENTWATER CAPITAL | ) | |
| MANAGEMENT LP, | ) | |
| HALBOWER HOLDINGS, INC., | ) | |
| and MATTHEW C. HALBOWER | ) | |
| | ) | |
| Defendants. | ) | |

Submitted: June 23, 2017
Decided: October 31, 2017

**Defendants' Motion to Dismiss – GRANTED in Part and DENIED in Part.
Plaintiff's Partial Motion for Summary Judgment – DENIED**

## MEMORANDUM OPINION

John L. Reed, Esquire, Ethan H. Townsend, Esquire, Harrison S. Carpenter, Esquire, DLA Piper LLP (US), 1201 N. Market Street, Suite 2100, Wilmington, DE 19801. Attorneys for Defendants.

Thomas M. Horan, Esquire, Johnna M. Darby, Esquire, Shaw Fishman Glantz & Towbin LLC, 300 Delaware Avenue, Suite 1370, Wilmington, DE 19801. Attorney for Plaintiff.

**CARPENTER, J.**

Defendants Pentwater Capital Management LP ("Pentwater"), Halbower Holdings, Inc. ("Holdings"), and Matthew C. Halbower ("Halbower") (jointly "Defendants") move to dismiss the Amended Verified Complaint ("Complaint") filed by Plaintiff Daniel C. Murphy ("Murphy" or "Plaintiff"). Plaintiff also filed a Motion for Partial Summary Judgment for Count I of the Complaint. For the following reasons, the Motion to Dismiss as to Defendant Halbower is granted and all remaining Motions are denied.

## I.   FACTS

This action stems from the parties' varying interpretations of Plaintiff's Employment Agreement and Pentwater's Employee Bonus Plan (the "Agreements"). Plaintiff was employed at Pentwater, a Chicago based hedge fund, from February 2008 to February 2011[1] and rejoined Pentwater in July, 2013 as the Co-Head of Fixed Income.

Upon his return, Plaintiff received a copy of his Employment Agreement and Bonus Plan. The Employment Agreement set forth the salary, benefits, and other bonuses available to Plaintiff including the disputed post termination bonus.[2] It also stated:

---

[1] *See id.* Murphy left since he believed that Halbower did not set his bonus compensation through any objective criteria and that Murphy did not have an equity stake in Pentwater.
[2] *See* Am. V. Compl., Ex. 1, § 5.4.

2

[i]n the event your employment is terminated, Pentwater will have no further obligation to provide any further compensation or benefits to you, including post termination bonus, unless you execute a waiver and release of claims within two weeks of your termination in a form reasonably determined by Pentwater.[3]

The Bonus Plan, dated April 20, 2010, confirmed the "explanation of Pentwater's Synthetic Equity program, including that, if Murphy's employment with Pentwater was terminated, he still would be entitled"[4] to earn an annual Incentive Bonus.[5] The Bonus Plan stated that:

> If the employment of a Plan Participant is terminated for any reason other than Cause and said Plan Participant is not in breach of any provision of his or her employment contract, the Plan Participant shall have the right to continue to receive Incentive Bonuses based upon his or her Synthetic Equity Percentage until such time as he or she has received in aggregate the Post Termination Incentive Bonus Cap. Once the Plan Participant has received the Post Termination Incentive Bonus Cap, the plan Participant shall have no further rights to receive any Incentive Bonus or payment of any kind under the Plan.[6]

Post Termination Incentive Bonus Cap was defined as:

> The amount equal to the sum of (a) the Post Termination Incentive Bonus Supplement and (b) a Plan Participant's Synthetic Equity Percentage multiplied by the lesser of (i) the Book Value on December 31 prior to the date of termination or (ii) the Book Value on December 31 subsequent to the date of termination.[7]

---

[3] Am. V. Compl., Ex. 2 ¶ 6.
[4] Am. V. Compl. ¶ 4.
[5] *See id.*
[6] Am. V. Compl., Ex. 1, at 3.
[7] *Id.*

3

On July 15, 2013, the day before Plaintiff began at Pentwater, the Bonus Plan was amended, and during the time that Plaintiff worked there, it was amended two additional times before he terminated his employment.[8] Plaintiff was unaware of such amendments until his separation from Pentwater in 2015.[9] In fact, Plaintiff received bonuses from Pentwater for the two years 2013 and 2014 without issue.[10]

On August 7, 2015, after a disagreement regarding compensation, Plaintiff separated from Pentwater.[11] There is an on-going dispute as to whether Plaintiff was terminated or resigned, but after August 2015, he was no longer employed by the company.[12] Plaintiff sought to enforce the Bonus Plan, which required Pentwater to pay Murphy the Post Termination Incentive Bonus Supplement and an annual Incentive Bonus (jointly the "Bonus Plan Money") "on or before February 15, 2016."[13] The Defendants refused to pay Plaintiff the Bonus Plan Money, asserting Plaintiff did not meet his obligations under the Agreements. Specifically, Defendants assert that Plaintiff failed to execute a release and waiver within two weeks of termination.[14] Additionally, Defendants assert that Plaintiff resigned from Pentwater, releasing them of payment of any post termination bonuses.

---

[8] *See* Am. V. Compl. ¶ 29.
[9] Am. V. Compl. ¶ 29.
[10] *See id.* at ¶ 32.
[11] *See id.* at ¶ 7.
[12] *See id.* at ¶ 33.
[13] Am. V. Compl. ¶ 36.
[14] Defs. Opening Br. in Supp. of their Mot. To Dismiss at 5.

Upon denial of the Bonus Plan Money, Plaintiff filed suit in the Court of Chancery on June 12, 2016.[15] The Court of Chancery held it lacked subject matter jurisdiction over the case and Plaintiff transferred the case to the Superior Court on December 30, 2016,[16] and filed an Amended Verified Complaint. Plaintiff's complaint asserts claims for breach of contract, violation of the Illinois Wage Payment and Collection Act ("IWCPA"), and fraudulent inducement.[17] The Plaintiff's Amended Verified Complaint included a breach of contract claim, which Plaintiff previously stated in the Court of Chancery pleading he would not pursue due to time and expense.[18]

In response to Plaintiff's Amended Verified Complaint, Defendants filed a Motion for Judicial Action and to Strike, which was denied in February 2017. Plaintiff subsequently filed a Motion for Partial Summary Judgment on Count I of the Amended Verified Complaint. On March 17, 2017, Defendants filed a Motion to Dismiss the amended verified complaint pursuant to Superior Court Civil Rules 12(b)(2) and 12(b)(6), for lack of personal jurisdiction and failure to state a claim. This is the Court's decision on these Motions.

---

[15] Am. V. Compl. ¶ 48.
[16] *See id.*
[17] *See id.* at ¶ 7.
[18] Ch. Compl. at 9 n.1.

5

## II. MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

On a defendant's motion to dismiss pursuant to Superior Court Civil Rule 12(b)(2) for lack of personal jurisdiction, the plaintiff "bear[s] the burden to articulate a non-frivolous basis for this court's assertion of jurisdiction."[19] The plaintiff can satisfy this burden "by making a *prima facie* showing that jurisdiction is conferred by statute."[20] Although the factual record is read in the light most favorable to the plaintiff in ruling on the motion, "the plaintiff must plead specific facts and cannot rely on mere conclusory assertions."[21] This requires the Court to answer two legal questions. "First, it must determine whether jurisdiction is appropriate under Delaware's Long-Arm statute. And, second, it must evaluate whether asserting such jurisdiction would offend the Due Process Clause of the Constitution."[22]

Defendants argue that Counts IV and V against Halbower as an individual should be dismissed for lack of personal jurisdiction. Defendants contend that the Court has no personal jurisdiction over Halbower as he is a resident of Illinois and

---

[19] *IM2 Merch. & Mfg., Inc. v. Tirex Corp.*, 2000 WL 1664168, at *4 (Del. Ch. Nov. 2, 2000) (citing *Hart Holding Co. Inc. v. Drexel Burnham Lambert Inc.*, 593 A.2d 535, 539 (Del. Ch. 1991)). *See also In re Asbestos Litig. (Anderson)*, 2015 WL 556434, at *3 (Del. Super. Jan. 30, 2015); *Boone v. Oy Partek Ab*, 724 A.2d 1150, 1154 (Del. Super. 1997), *aff'd*, 707 A.2d 765 (Del. 1998); *Greenly v. Davis*, 486 A.2d 669, 670 (Del. 1984); *Harmon v. Eudaily*, 407 A.2d 232, 233 (Del. Super. 1979), *aff'd*, 420 A.2d 1175 (Del. 1980).

[20] *McKamey v. Vander Houten*, 744 A.2d 529, 531 (Del. Super. 1999).

[21] *Mobile Diagnostic Grp. Holdings, LLC v. Suer*, 972 A.2d 799, 802 (Del. Ch. 2009).

[22] *Boone*, 724 A.2d at 1154–55. *Sample v. Morgan*, 935 A.2d 1046 (Del. Ch. 2007) (citing *AeroGlobal Capital Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 438 (Del. 2005).

6

has no contacts with the State other than being the CEO of the two Delaware Defendants.[23] Plaintiff asserts that Halbower is subject to the jurisdiction of this Court based on the Delaware Long-Arm Statute, 10 Del. C. § 3104(c)(1) because Halbower, "regularly transacts business in Delaware."[24] Plaintiff also asserts that personal jurisdiction is proper based on the forum-selection clause in the disputed Bonus Plan.[25]

Under Delaware's Long-Arm statute, Delaware courts can exercise personal jurisdiction over a defendant for a claim that "arises from" a "jurisdictional act" enumerated in the statute.[26] Section 3104(c)(1) gives this Court personal jurisdiction over any nonresident who "transacts any business or performs any character of work or service in the State."[27] "In order for this Court to exercise jurisdiction under 3104(c)(1) 'some act must actually occur in Delaware.'"[28]

Plaintiff contends that jurisdiction over Halbower is proper because Halbower regularly transacts business in Delaware.[29] However, in his Amended Verified Complaint, Plaintiff fails to cite to any specific instances of such activity as required

---

[23] Am. V. Compl. ¶¶ 11–12 (stating that Pentwater and Holdings are both Delaware corporations).
[24] See id. at ¶ 8.
[25] See id.
[26] Sprint Nextel Corp. v. iPCS, Inc., C.A. No. 3746-VCP, 2008 WL 2737409, at *5 (Del.Ch. 2008).
[27] 10 Del. C. § 3104(c)(1).
[28] Mobile Diagnostic Group, 972 A.2d at 804 (citing Kelly v. McKesson HBOC, Inc., 2002 WL 88939, at *17 (Del. Super. 2002)).
[29] See Defs.' Opening Br. in Supp. of their Mot. To Dismiss at 15.

7

and in fact, the Complaint is totally void of any such information. It appears the Plaintiff simply assumed jurisdiction without pleading it even though the conduct here occurred in Illinois.[30] As such, the Court agrees with the Defendants that Plaintiff has failed to make a prima facie showing to fit Halbower's conduct under Delaware's Long-Arm Statute. Plaintiff's claim for personal jurisdiction via the forum-selection clause, however, is more complicated and requires additional analysis.

Plaintiff asserts "that Halbower is estopped from contesting jurisdiction based on his close relationship with the Bonus Plan, as someone who it was foreseeable would be sued personally in matters relating to the administration of the plan."[31] Plaintiff cites to previous Delaware cases which held non-party officers and directors bound to forum-selection clauses.[32] Such cases applied the following three-pronged test to determine if a non-party should be bound: "(1) [the] forum selection clause [is] valid, (2) [] the non-signatory [is] a third-party beneficiary of the agreement or [is] closely related to the agreement, and (3) [] the claim at hand arise[s] from the non-signatory's claims related to the agreement[.]"[33]

---

[30] Am. V. Compl. ¶ 8 ("In addition, upon information and belief, Halbower regularly transacts business in Delaware.").
[31] Pl's. Answering Br. in Opp. Of Defs.' Second Mot. To. Dismiss at 11.
[32] *Carlyle Inv. Mgt. LLC v. Moonmouth Co. SA*, 779 F.3d 214, 219 (3d Cir. 2015)
[33] *Id.* at 218.

Plaintiff asserts that the first and third prong are easily satisfied[34] and "the only question is if Halbower is a third-party beneficiary of, or closely related to, the Bonus Plan."[35] Plaintiff cites Delaware Chancery case *Weygandt v. Weco, LLC*, where the Court recognized that "a party can be closely related to an agreement: 1) she receives direct benefit from the agreement; or 2) it was foreseeable that she would be bound by the agreement."[36]

Plaintiff does not contend that Halbower receives a direct benefit,[37] but rather that it was foreseeable that Halbower could be sued in matters relating to the Bonus Plan as CEO of both Holdings and Pentwater and "makes all significant decisions regarding their operations."[38] More specifically, Plaintiff argues that "it was foreseeable that Halbower could be sued individually under the IWPCA for causing Pentwater to breach the Bonus Plan."[39]

Defendants assert that Halbower is doubly shielded by the fiduciary shield doctrine, as the Bonus Plan is not an agreement with Halbower personally nor is the Bonus Plan a Holdings document.[40] The fiduciary shield doctrine prohibits acts

---

[34] Pl's. Answering Br. in Opp. Of Defs.' Second Mot. To. Dismiss at 12 (stating that the first prong is satisfied as both Delaware and Illinois uphold forum-selection clauses and that the third prong is "satisfied if the claim at issue against is related to the agreement containing the forum selection clause" *Weygandt v. Weco, LLC*, 2009 WL 1351808, at * 4 n.15).

[35] *Id.*

[36] *Weygandt v. Weco, LLC*, 2009 WL 1351808, at *4(Del. Ch. 2009).

[37] In the original brief in opposition the Plaintiff does attempt to argue direct benefit.

[38] Pl's. Answering Br. in Opp. Of Defs.' Second Mot. to Dismiss at 13.

[39] *Id.*

[40] *See* Defs.' Opening Br. in Supp. of their Mot. to Dismiss at 15.

performed by a person acting in his official corporate capacity from serving as the basis for personal jurisdiction over that individual.[41] Defendants assert Halbower was not a party to the Bonus Plan and as a non-signatory he is not bound to the forum-selection clause.[42]

The Court finds that the cases Plaintiff relies on are distinguishable from Halbower, and he is not closely related enough such that it would be foreseeable that he would be haled into Delaware courts. For example, in *Hadley v. Shaffer*, the Court stated that defendants could be bound to the forum-selection clause if they were considered either parties, third-party beneficiaries, or closely related to the Agreement.[43] The Court held the defendants were third-party beneficiaries of the merger agreement and were to receive payments set forth in the agreement.[44] However, the Court suggested that if the defendants were not third-party beneficiaries, they would be considered closely related as "they were undoubtedly intended to receive a benefit from the sale of their stock through the Merger Agreement."[45] In the instant case, Halbower is not a third-party beneficiary, nor has

---

[41] *See Mktg. Prod. Mgmt., LLC v. HealthandBeautyDirect.com, Inc.*, 2004 WL 249581 at *3 (Del. Super. 2004).

[42] *Metropolitan Life Ins. Co. v. Tremont Gp. Hldgs., Inc.*, 2012 WL 6632681, at *4 (Del. Ch. 2012) (finding that directors who simply signed an agreement with a forum-selection were not subject to personal jurisdiction based on their signatures).

[43] Hadley v. Shaffer, 2003 WL 21960406, at *4 (D. Del. 2003)

[44] *See id.*

[45] *See id.* at *5–6.

10

the Plaintiff provided any evidence to suggest Halbower as an individual would directly benefit from the Agreements.

Similarly, in *Baker v. Impact Holding, LLC*, the Court found that the defendant was bound by the forum-selection clause because he received a direct benefit as a board of director for a listed entity in the stockholder agreement.[46] More specifically that the company the defendant was a director for had substantial investments in the disputed agreement.[47] Here, however, Plaintiff has not provided evidence to suggest that Halbower received any direct benefit to consider him similar to the defendant in *Baker*.

Further, the Plaintiff relies heavily on *Weygandt v. Weco, LLC* for support but that case is factually distinguishable from the case at hand. Specifically, that Weygandt, as an individual and as a control person, had previously agreed to be bound to Delaware jurisdiction in a separate agreement—the Asset Purchase Agreement.[48] Because the Lease Agreement, the agreement between W&A and Gulf Stream, did not include a forum-selection clause, the Court found that non-signatory

---

[46] Baker v. Impact Holding, LLC, 2010 WL 1931032, at *4 (Del. Ch. 2010).

[47] *See id.*

[48] This case involves an Asset Purchase Agreement and a Lease Agreement. The Asset Purchase Agreement executed Weygandt and Weco-California, preceded the Lease Agreement. Weco, LLC ("Weco-Delaware"), a wholly owned subsidiary of Gulfstream Aerospace. It was in the Asset Purchase Agreement that Weygandt agreed to Delaware jurisdiction. The Lease Agreement arose from the first agreement and did not include a forum-selection clause. Plaintiff Gulfstream asserted W&A was bound by single agreement theory, which was denied and equitable estoppel. Judge Strine concluded there was both direct benefit and foreseeability from the two agreements. *Weygandt v. Weco, LLC*, 2009 WL 1351808, at *4 (Del. Ch. 2009).

11

W&A, was bound by the Asset Purchase Agreement's forum-selection clause because it was controlled by Weygandt who had already provided consent.[49] Justice Strine bound the non-signatory to the forum-selection clause to prevent "duplicative and inefficient litigation in multiple forums and undermine the benefit of predictability that W&A's controller, Weygandt, provided…"[50] This case like *Weygandt* has interrelated agreements, however both the Bonus Plan and Employment Agreement have forum-selection clauses. The Bonus Plan lists Delaware, while the Employment Agreement lists Illinois. Thus, unlike in *Weygandt*, there is no issue of undermining predictability or having inefficient litigation in multiple forums because the Agreements predetermine the forums. Further, Halbower never agreed to be bound to this jurisdiction, nor did Holdings. Halbower signed the Bonus Plan as a general partner of Holdings on behalf of Pentwater.

The Court agrees with Defendants that Plaintiff's argument stretches personal jurisdiction beyond its appropriate bounds. The Plaintiff has failed to provide evidence and precedent cases that suggest Halbower is closely related enough to the Agreements to find his presence in Delaware courts to be foreseeable. The

---

[49] *See id.* at *5.
[50] *See id.* at *6.

Defendants' Motion to Dismiss for Lack of Personal Jurisdiction the counts that include Halbower is **GRANTED** as to that Defendant.

### III.    MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

In considering the Motion to Dismiss for failure to state a claim filed pursuant to Rule 12(b)(6), the Court must assume the truthfulness of the Complaint's well-pleaded allegations,[51] and afford Plaintiffs "the benefit of all reasonable inferences that can be drawn from [their] pleading."[52] Certain documents that are "integral to a plaintiff's claims...may be incorporated by reference without converting the motion to a summary judgment."[53] At this preliminary stage, dismissal will be granted only when the Court is able to determine with "reasonable certainty" that Plaintiffs would not be entitled to relief "under any set of facts that could be proven to support the claims asserted" in the Complaint.[54]

Defendants argue that all five counts of the Plaintiff's Amended Verified Complaint fail to plead viable claims on which relief may be granted.

---

[51] *See Solomon v. Pathe Commc'ns Corp.*, 672 A.2d 35, 38-39 (Del. 1996). *See also VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 611 (Del. 2003) (noting that the complaint is to be liberally construed and under "Delaware's judicial system of notice pleading, a plaintiff need not plead evidence" but must "only allege facts that, if true, state a claim upon which relief can be granted").

[52] *See In re USACafes, L.P. Litig.*, 600 A.2d 43, 47 (Del. Ch. 1991) (noting, however, that the Court is not required to blindly accept all allegations or draw all inferences in a plaintiff's favor).

[53] *See Furnari v. Wallpang, Inc.*, 2014 WL 1678419, at *3-4 (Del. Super. Apr. 16, 2014).

[54] *See id.* (citing *Clinton v. Enter. Rent–A–Car Co.*, 977 A.2d 892, 895 (Del. 2009)).

In Counts I and II of Plaintiff's Amended Verified Complaint, Plaintiff alleges Defendants, Pentwater and Holdings, breached the Agreements by failing to provide Plaintiff a release and waiver form and failing to pay Plaintiff annual incentive bonuses until the amount equals a Post Termination Incentive Bonus Cap and his Post Termination Incentive Bonus Supplement.[55] As a result, Plaintiff seeks payment of such bonuses which Plaintiff expects to exceed $1,550,000 for the Annual Incentive Bonuses[56] and exceed $1 million for the Post Termination Incentive Bonus Supplement.[57]

The parties do not dispute, for purposes of the present motion, the sufficiency of Plaintiff's allegations with respect to the elements of an existing contract and, if proven, the damages that would flow from the breach. Rather, they disagree as to whether Plaintiff has adequately alleged that Defendants breached the Agreements. Defendants contend that the language in the Agreements is unambiguously clear and required Plaintiff to execute a release of claims within two weeks of his termination as a condition precedent.[58] They assert Plaintiff's failure to do so released Defendants of their obligation to pay.[59] Further, because Plaintiff allegedly resigned

---

[55] Am. V. Compl. ¶¶¶¶ 36–39.

[56] *See id.* at ¶ 60.

[57] *See id.* at ¶ 67.

[58] The contractual condition precedent in this case, is "a fully executed waiver and release of claims [against Pentwater by Plaintiff] within two weeks of termination in a form reasonably determined by Pentwater." Defs.' Opening Br. in Supp. Of their Mot. to Dismiss at 3.

[59] It is undisputed by both parties that Plaintiff failed to sign a waiver and release within two weeks of Plaintiff's separation from Pentwater.

from Pentwater, Defendants contend that Plaintiff would not have been eligible for the Post Termination Incentive Bonus Supplement.[60] Defendant also asserts that Count II, regarding the Post Termination Incentive Bonus Supplement, was "expressly abandoned [] in the Court of Chancery and cannot [be] resuscitate[d]..."[61]

In contrast, Plaintiff argues that the waiver and release requirement is not a material term to his Employment Agreement and that Plaintiff has "fully performed all material obligations."[62] Plaintiff argues if the release clause is a condition precedent, Pentwater failed to meet its obligations under the Agreement, because it failed to provide or "reasonably determine" the form of the release, thus preventing Plaintiff's performance.[63] Defendants also failed to advise Plaintiff in any correspondences that Plaintiff had to provide a release.[64]

The simple answer here is that the Motion is premature. The arguments made by all parties are ones which the Court would entertain after the parties have conducted appropriate discovery and flushed out the issues surrounding the waiver and the decision to leave the company. The Court generally only allows the parties one opportunity to pursue issues of this nature and it is confident, based upon the present record, that Defendants at this juncture would not want the Court to rule and

---

[60] *See* Defs.' Opening Br. in Supp. Of their Mot. to Dismiss at 12.
[61] *See id.* at 5.
[62] Am. V. Compl. 53.
[63] *See id.* at 21–22.
[64] *See id.* at 8.

15

foreclose them from raising it again by summary judgment. As such, the Motion to Dismiss Counts I and II is denied as the Court finds continuing factual issues that prevent a fair determination at this point in the litigation.

As to the remaining counts, since the Court believes it is not in a position to rule on the breach of contract dispute, it follows that until that dispute is resolved, the decision on Count III must also wait. While the Court does have significant concerns regarding the merit of Count V as it relates to Pentwater, it will not dismiss that Count at this time and will allow Plaintiff discovery in an attempt to support his contentions. Candidly it seems to be encompassed in the breach of contract dispute, but the Court sees no pressing need to resolve that issue at this time.

The final issue is whether Plaintiff has waived his right to pursue the breach of contract claim found in Count II. The assertion by Defendant is that since Plaintiff did not file this claim initially in the Court of Chancery proceeding, and this case was transferred to this Court from the Court of Chancery, he has waived his right to this claim. In reviewing the briefs filed as to this issue, Defendant has provided no authority to support the contention that the mere transfer to the proper jurisdiction court allows only the previously filed claims to be litigated. The Court finds no merit to this contention, and if Plaintiff had sought permission of the Court to add this Count it would have been freely granted. Defendant is not prejudiced by the inclusion of this Count as the case is in its infancy and it allows all the issues in this

dispute to be fairly and fully litigated. Therefore, the Motion to Dismiss Count II on this basis is also denied.

Finally, Plaintiff has moved for partial summary judgment asserting there is no dispute that Plaintiff was not terminated for cause and therefore he is entitled to payment under the bonus plan. In spite of Plaintiff's contentions, this issue is intertwined with the waiver and release issue and simply cannot be resolved in what has been provided to the Court. In what is a classic "what is good for the goose is good for the gander" the Court will apply the same reasoning to deny the summary judgment motion.

Having resolved the outstanding motions, it is clear to the Court there is plenty of blame to spread around among the parties of this dispute, and the personalities of the clients and their dislike for each other has permeated into this litigation. It is counsel's obligation to remove themselves from such pettiness and try to reasonably resolve the case. The Court is confident that both parties are in a financial position to litigate this matter for years, but at the end of the day they will probably be in no better position than they are now. This is a matter that should be resolved between the parties, and the Court is confident it could be if they would put their strong personalities aside.

Therefore, as discussed with counsel, the Court will issue an Order that the parties are to mediate in good faith with Judge Farnan and the failure to do so,

evidenced by past conduct, may result in sanctions to the parties and perhaps counsel. The Court will simply not condone or allow such conduct to continue.

IT IS SO ORDERED.

Judge William C. Carpenter, Jr.