**Edwin N. McKAMEY, Jr. and Helen G. McKamey, his wife, Plaintiffs,**

v.

**Robert J. VANDER HOUTEN, Rhonda Matteson and Rhonda Matteson d/b/a A.R. Gamez Transport, Defendants.**

**Civil Action No. 99C–02–133–JOH.**

Superior Court of Delaware,
New Castle County.

Submitted: Sept. 7, 1999.
Argued: Sept. 8, 1999.
Decided: Oct. 19, 1999.

Frederick T. Haase, Jr., of Haase & Eveland, Wilmington, DE, for plaintiffs.

Gilbert F. Shelsby, Jr., of Mason, Ketterman, Morgan & Shelsby, Newark, DE, for defendants.

## OPINION

HERLIHY, Judge.

Claiming that this Court lacks personal jurisdiction over them, the defendants have moved to dismiss plaintiffs' complaint. The basis of their argument is that the alleged underlying tort action occurred in Maryland, that they are Florida residents and that they have no real connection to Delaware.

Plaintiff Edwin N. McKamey, Jr.,[1] a Delaware resident, was injured while driving his truck in Maryland when it was struck by another truck operated by defendant Robert J. Vander Houten, a Florida resident. He was driving for defendant Rhonda Matteson d/b/a A.R. Gamez Transport, an unincorporated Florida entity. A.R. Gamez hauls cars between either New England or New York/New Jersey and Florida. Its only connection to Delaware is passing through it on U.S. 13 or Interstate 95 on these interstate trips.

Despite this slight connection to Delaware, federal law requires A.R. Gamez to designate a registered agent in this state, as well as any other state its trucks pass through. Vander Houten does not have any similar obligation. Plaintiffs served both defendants by serving the Delaware registered agent of A.R. Gamez.

As to A.R. Gamez, its motion raises an issue of first impression in Delaware: whether its federally mandated designation of a registered agent here gives this Court personal jurisdiction over it for a tort action occurring in another state, when it otherwise has no substantive contacts in or with this state. This Court holds that it does. Since that requirement does not apply to Vander Houten, this Court does not have personal jurisdiction over him.

---

1. Plaintiff Helen G. McKamey's claim is for    loss of consortium.

## APPLICABLE STANDARD

■ When a motion to dismiss challenges personal jurisdiction, the plaintiff has the burden to show the basis for the Court's jurisdiction over a nonresident defendant.[2] The plaintiff satisfies this burden by making a *prima facie* showing that jurisdiction is conferred by statute.[3] The essential facts necessary to resolve the jurisdictional issues presented here are not in dispute.

## DISCUSSION

Plaintiffs rely upon two statutes in an attempt to meet their burden. The first is the Delaware long-arm statute[4] and the second is the federal Motor Carrier Act.[5] This Court will address the applicability of these statutes first as to A.R. Gamez.

■ When determining whether jurisdiction is conferred by the long-arm statute, this Court is required to follow a two-part analysis.[6] First, the Court looks to see if the actions of A.R. Gamez fall under either the general or specific jurisdictional criteria of the statute. Second, the Court must then determine whether exercising personal jurisdiction over A.R. Gamez is constitutionally permissible.[7] Among the provisions of the long-arm statute, only three have any possible application to this case. They are:

(c) As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:

(1) Transacts any business or performs any character of work or service in the State;

(2) Contracts to supply services or things in this State;

\*    \*    \*    \*    \*    \*

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State.[8]

■ The plaintiffs cannot show A.R. Gamez's actions satisfy any of these provisions. A.R. Gamez conducts no business here and there is no indication that it performs any work or service in this State. Nor have plaintiffs shown that A.R. Gamez has contracted to supply services or things in Delaware. In short, plaintiffs cannot satisfy subsections (1) or (2). They can satisfy, however, one part of subsection (4) which is that there was a tortious act outside Delaware. But, that alone is not enough since they cannot also show A.R. Gamez, the alleged tortfeasor, had any substantive contacts in this state. In short, the plaintiffs cannot utilize the long-arm statute to gain personal jurisdiction over A.R. Gamez.[9] The unavailability of the long-arm statute means this Court need not engage in the analysis of the

**2.** *Plummer & Co. Realtors v. Crisafi*, Del.Super., 533 A.2d 1242, 1244 (1987).

**3.** *Mid–Atlantic Machine & Fabric, Inc. v. Chesapeake Shipbuilding, Inc.*, Del.Super., 492 A.2d 250, 253 (1985).

**4.** 10 *Del.C.* § 3104.

**5.** 49 U.S.C. § 13304(a) formerly 49 U.S.C.A. § 10330 which was recodified, effective January 1, 1996, to its current designation. (Pub. L.No. 104–88). Prior to being § 10330, it was 49 U.S.C. § 321(c).

**6.** *Outokumpu Engineering Enterprises, Inc. v. Kvaerner Enviropower, Inc.*, Del.Super., 685 A.2d 724, 727 (1996).

**7.** *See Waters v. Deutz Corp.*, Del.Supr., 479 A.2d 273 (1984).

**8.** 10 *Del.C.* § 3104.

**9.** *Accord Mathews v. Rail Express, Inc.*, D.C.N.D.Ga., 836 F.Supp. 873 (1993); *Maroshek v. East Penn Trucking Co.*, D.C.D.C., 1992 WL 101621 (1992).

constitutional implications of applying the statute.

■ The plaintiffs, however, do not rely alone upon the long-arm statute to gain personal jurisdiction over A.R. Gamez. They also invoke the federal Motor Carrier Act, which requires A.R. Gamez, as an interstate carrier, to "designate an agent in each State in which it operates ... on whom service of process issued by a court with subject matter jurisdiction may be brought...."[10] Designation of such an agent operates as an express consent to personal jurisdiction.[11] One of the purposes behind this designation provision was to protect United States citizens from injury resulting from the negligent actions of interstate carriers.[12]

Some time ago this Court held, however, that the Act could not be used to obtain personal jurisdiction over a nonresident interstate carrier when the event occurred during intrastate commerce.[13] In this case, on the other hand, the event at issue occurred when A.R. Gamez' truck was engaged in interstate commerce.

In that situation, nearly all federal and State courts which have considered the effect of the Act have held that it enables plaintiffs to obtain personal jurisdiction over an interstate carrier in states where they do not do business, but in which they are registered, for incidents occurring in a third state.[14] Though written over fifty years ago, the words used by the Court in *Sansbury* still accurately describe a purpose of the Motor Carrier Act in allowing actions in circumstances such as this case:

> It would appear from the terms of the [Motor Carrier] Act ... that such motor carriers are treated as if physically present in each of the States through which they are licensed to operate, and, although they may not have physical property and station agents at all times within each jurisdiction, they are, for the purpose of answering process of the

---

**10.** 49 U.S.C.A. § 13304(a).

**11.** *Knowlton v. Allied Van Lines,* 8th Cir., 900 F.2d 1196, 1200 (1989).

**12.** *Ocepek v. Corporate Transport, Inc.,* 8th Cir., 950 F.2d 556, 559 (1991) (For a more extensive discussion of the Congressional purpose behind the Motor Carrier act, see the court's discussion on page 559.)

**13.** *Goode v. Sisk,* Del.Super., 107 A.2d 891 (1954); *accord Davies v. Mahanes,* 4th.Cir., 183 F.2d 671 (1950).

**14.** *Ocepek,* 950 F.2d 556 (plaintiff, a Missouri resident, brought suit in that state against a New York-based carrier for an accident in Ohio); *Rounds v. Rea,* D.C.W.D.N.Y., 947 F.Supp. 78 (1996) (New York plaintiff brought suit in that state against a Michigan trucking company for an accident in Pennsylvania); *Mittlestadt v. Rouzer,* 213 Neb. 178, 328 N.W.2d 467 (1982) (Nebraska resident can sue an Arkansas trucking company for injuries received in an automobile accident in Arizona); *Sansbury v. Schwartz,* D.C.D.C., 41 F.Supp. 302 (1941) (a Maryland resident can sue a Delaware trucking company in the District of Columbia for an accident in Delaware); *see also Domingo v. Paul,* D.C.Md.,

1992 WL 333842 (1992) (Maryland resident permitted to sue in that state a Massachusetts trucking company for an automobile accident in New Jersey; the trucking company, however, had some Maryland contacts); *Knowlton,* 900 F.2d 1196 (Minnesota resident was able to sue Delaware trucking company in Minnesota for an accident in Iowa; trucking company did business in Minnesota and registered there under state law but *in dicta* court said Motor Carrier Act would provide sufficient express consent); *Mullinax v. McNabb–Wadsworth Truck Co.,* D.C.N.D.Ga., 117 F.R.D. 694 (1987) (*in dicta,* court stated Act could be used by Georgia residents to get jurisdiction over Tennessee corporation for an accident in a third state—the Tennessee corporation was also registered to do business in Georgia); *accord in property damages cases, Hirsch v. National Van Lines, Inc.,* 136 Ariz. 304, 666 P.2d 49 (1983); *Electronic Race Patrol, Inc. v. National Trailer Convoy, Inc.,* D.C.S.D.N.Y., 191 F.Supp. 364 (1961); *compare Clark v. Babbitt Brothers, Inc.,* 260 S.C. 378, 196 S.E.2d 120 (1973) (court held South Carolina resident could use Act to sue in South Carolina a Wisconsin interstate carrier for an accident in Kentucky—the accident, however, occurred after the Wisconsin carrier had ceased doing any business or having any connection to South Carolina).

courts of such jurisdiction, legally to be found therein and inhabitants thereof.[15]

Following the theme of the *Sansbury* court, it has also been held that the express consent of the Motor Carrier Act eliminates the need to engage in the minimum contacts constitutional analysis when state long-arm statutes are invoked. The Court in *Ocepek* explained the reason why such analysis is unnecessary:

> Our reliance on the federal statute as sufficient to confer jurisdiction over the person of the defendant makes it unnecessary for us to address ... minimum contacts under the state long-arm statute.... In most cases, service on out-of-state businesses is made under state long-arm statutes, with no other basis for valid service of process asserted by the plaintiff. In that situation, of course, jurisdiction depends on the plaintiff's being able to fit the case within the state statute, which, then, must also be tested for fundamental fairness under the minimum-contacts doctrine. Nothing in any of the cases cited establishes, nor could there be any reason for believing, that Congress could not provide another method of service by legislation under the Commerce Clause.[16]

This statement is important for two reasons. First, as noted earlier, when jurisdiction is sought under a long-arm statute, *i.e.,* considered to be implied consent to jurisdiction, the courts must engage in a two-part analysis. Based on the reasoning of *Ocepek,* such two-part analysis is eliminated. Second, the *Ocepek* court's reasoning is important in the context of Delaware precedent. Delaware has a statute requiring any foreign corporation seeking to qualify to do business here to designate a registered agent.[17] In *Sternberg v. O'Neil,*[18] the Delaware Supreme Court held this statute was an express consent statute.[19] Even so, the *Sternberg* court

felt constrained to engage in a minimum contacts analysis. An examination of that analysis, however, indicates it was undertaken because, out of caution, the Court was concerned with the implied consent undertones present in the factual context of *Sternberg* (a double derivative action against an Ohio corporation and a Delaware corporation which was a wholly-owned subsidiary of that Ohio corporation which had also qualified to do business here by designating a registered agent).

■ There is a key and obvious difference between a state statute such as a long-arm statute or one like the statute considered in *Sternberg* and the registration provision of the federal Motor Carrier Act. The latter was and is a legitimate exercise by Congress of its powers to regulate interstate commerce. "Minimum contacts" analysis is a due process analysis of a state statute, in part made necessary to determine if a state's attempted exercise of jurisdiction infringes on interstate commerce. Consequently, when Congress exercises its constitutional authority over interstate commerce, that aspect of the due process analysis is irrelevant. While, therefore, the *Sternberg* court found it necessary to conduct a minimum contacts analysis, such an analysis need not be made in this instance. In sum, A.R. Gamez' designation of a registered agent in Delaware in compliance with the Motor Carrier Act operates as express consent to the jurisdiction of this Court to hear and try this case.

■ On the other hand, such designation and consent of A.R. Gamez applies only to that entity (and/or Rhonda Matteson) but not to Vander Houten. The Act does not require him, as an interstate driver, to designate a registered agent here. The same courts which have held that a

**15.** *Sansbury,* 41 F.Supp. at 303.

**16.** *Ocepek,* 950 F.2d at 557, n. 1.

**17.** 8 *Del.C.* § 371.

**18.** 550 A.2d 1105 (1988).

**19.** *Id.* at 1110, 1107.

carrier's designation of an agent confers personal jurisdiction have also held that the Motor Carrier Act does not apply to the driver.[20] Without express consent of the Motor Carrier Act, plaintiffs' only other means to obtain jurisdiction over Vander Houten is provided by Delaware's long-arm statute. There is no activity delineated by the long-arm statute applicable to the facts of this case. The accident was in Maryland. Vander Houten does not conduct and has not conducted any activity in this state which would trigger the long-arm statute. He may have driven through Delaware while going between New York and Florida, but such activity does not itself satisfy any of the jurisdictional thresholds of Delaware's long-arm statute.

As to plaintiffs' action against Vander Houten, therefore, it must be dismissed.

## CONCLUSION

For the reasons stated herein, the motion to dismiss of defendants Rhonda Matteson, Rhonda Matteson d/b/a A.R. Gamez Transport is **DENIED**. The motion to dismiss of defendant Robert J. Vander Houten is **GRANTED**.

20. *Domingo,* D.C.Md., 1992 WL 333842; *Rounds,* D.C.W.D.N.Y. 947 F.Supp. 78.