# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MICHAEL CIABATTONI | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N15C-04-059 VLM |
| | ) | |
| TEAMSTERS LOCAL 326, | ) | |
| JOSEPH W. SMITH, JR., LEONARD | ) | |
| MCCARTNEY, RICHARD GIBBONS, | ) | |
| PAUL THORNBURG, WARREN | ) | |
| SCHUELER, PAUL BISHOP, GENE | ) | |
| PYTKO, JAMES J. RYAN, and | ) | |
| ROBERT TAYLOR, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Submitted: July 8, 2016
Decided: August 22, 2016

*Upon Consideration of Defendant Robert Taylor's
Motion to Dismiss,* **GRANTED.**

R. Joseph Hrubiec, Esquire, Wilmington, Delaware, Attorney for the Plaintiff.

Jeffrey M. Weiner, Esquire, Wilmington, Delaware, Attorney for the Defendant.

**MEDINILLA, J.**

## INTRODUCTION

This matter arises out of allegedly defamatory content posted to a Facebook page entitled "Bring the Teamsters to Fedex Freight." Defendant Robert Taylor ("Defendant Taylor") moves pursuant to Superior Court Civil Rule 12(b)(2) to dismiss the First Amended Complaint as to Defendant Taylor on the grounds that this Court lacks personal jurisdiction over Defendant Taylor. Plaintiff Michael Ciabattoni ("Plaintiff") asserts that this Court can exercise personal jurisdiction over Defendant Taylor based on the "conspiracy theory of personal jurisdiction" or, alternatively, based on specific jurisdiction under 10 *Del. C.* § 3104(c)(3). After consideration of the parties' submissions and review of the oral arguments presented on July 8, 2016, for the reasons stated below, Defendant Taylor's Motion to Dismiss is **GRANTED**.

## FACTUAL AND PROCEDURAL BACKGROUND

The "Bring the Teamsters to Fedex Freight" Facebook page (the "Facebook page") was created on or around July 25, 2014.[1] The purpose of this page was to encourage FedEx Freight employees to unionize under the Teamsters organization. The Facebook page was neither focused on Delaware nor on one particular region. Rather, the Facebook page offered a platform for FedEx employees from across the nation to discuss unionizing. The "handle," or username, and title of the page is

---

[1] "Bring the Teamsters to Fedex Freight" July 25, 2014 Facebook Post, Ex. A to Def.'s Reply Br.

"Bring the Teamsters to Fedex Freight"; this is the "name" of the person authoring the content that is posted to the Facebook page. It is therefore not apparent who writes the posts and/or attaches accompanying documents to the Facebook page. However, on May 3, 2015, one Travis Eby ("Eby") disclosed that he created the Facebook page.[2]

Facebook users who subscribe to this page can comment on posts that were originally posted by "Bring the Teamsters to Fedex Freight." Plaintiff assumes that the commenters thanking or giving credit to a "Bob" or a "Bob Taylor" in various posts[3] on the Facebook page are doing so because the those commenting somehow believe or know that person to be the author of the allegedly defamatory posts at issue in this matter, rather than for providing information to the actual author of the Facebook posts, or even as responses to omitted comments from another commenter with the username "Bob Taylor."

Plaintiff is a resident of Delaware.[4] At the time of the Facebook page's creation and operation, Plaintiff was employed by FedEx Freight.[5] Prior to working for FedEx, Plaintiff was employed by Teamsters Local 326.[6] Plaintiff

---

[2] "Bring the Teamsters to Fedex Freight" May 3, 2015 Facebook Post, Ex. C to Def.'s Reply Br.

[3] *See* "Bring the Teamsters to Fedex Freight" Compiled Facebook Posts, Ex. A to Original Compl.

[4] First Am. Compl. ¶ 1.

[5] *Id.* ¶ 27 ("Plaintiff and FedEx were parties to an independent contractor contract.").

[6] *See id.* ¶¶ 21, 43, 45.

alleges that numerous posts on the "Bring the Teamsters to Fedex Freight" Facebook page included defamatory content and attached confidential documents implicating his previous relationship with Teamsters Local 326. Plaintiff further alleges that as a result of comments and posts made on this Facebook page, he was terminated from his employment with FedEx Freight.[7]

Defendant Teamsters Local 326 is incorporated in Delaware.[8] Defendants Joseph W. Smith, Jr., Leonard McCartney, Richard Gibbons, Paul Thornburg, Warren Schueler, Paul Bishop, Gene Pytko and James J. Ryan are officers or directors of Teamsters Local 326 ("Individual Teamsters Defendants").[9] These Individual Teamsters Defendants either reside in Delaware, act within the scope of employment in Delaware and/or otherwise act in Delaware to further the interests of Teamsters Local 326.[10] In November 2012, some of these Individual Teamsters Defendants entered into a Settlement Agreement with Plaintiff on behalf of Teamsters Local 326 to "settle certain claims brought by Defendants against Plaintiff."[11] According to the terms of the confidential Settlement Agreement, Plaintiff's relationship with Teamsters Local 326 ended after he voluntarily

---

[7] *Id.* ¶ 10.

[8] *Id.* ¶ 2. According to Plaintiff's pending Proposed Second Amended Complaint, Teamsters Local 326 is also headquartered in Delaware. *See* Pl.'s Proposed Second Am. Compl. ¶ 2. *See also infra* note 24.

[9] First Am. Compl. ¶ 3.

[10] *Id.* at ¶¶ 3–4.

[11] *Id.* ¶ 42.

4

resigned.[12] Defendant Taylor was not a signatory to the Settlement Agreement.[13]

Defendant Taylor is a Pennsylvania resident[14] and at all relevant times was an employee of FedEx Freight;[15] Plaintiff's First Amended Complaint alleges that he was acting in his individual capacity.[16] Defendant Taylor was not a member or employee of Teamsters Local 326 at any time pertinent to Plaintiff's allegations.[17] Defendant Taylor does not transact any business in Delaware nor perform any character of work in Delaware;[18] he does not contract to supply services or things in Delaware and does not regularly do or solicit business, engage in any persistent course of conduct or derive substantial revenue from services or things use or consumed in Delaware.[19] Defendant Taylor has no interest, use or possession of real property in Delaware, has never contracted to insure or act as a surety in any manner in Delaware, does not have an agent in Delaware and at all relevant times

---

[12] Settlement Agreement, Ex. B to Original Compl. Pursuant to the Settlement Agreement, Plaintiff resigned and Teamsters Local 326 agreed not to pursue charges against Plaintiff for alleged misconduct while employed with the Teamsters. The provisions of the Settlement Agreement required the signatories to state, if asked, that Plaintiff "voluntarily resigned" and direct further questions to Plaintiff. *Id.*

[13] *See generally, id.*

[14] Robert Taylor's Aug. 13, 2015 Aff. ¶ 9, Ex. B to Def.'s Opening Br.

[15] FedEx is not a party to this action. *See generally* First Am. Compl.

[16] First Am. Compl. ¶ 5.

[17] Def.'s Opening Br. at 3.

[18] Robert Taylor's Aug. 13, 2015 Aff. ¶ 3, Ex. B to Def.'s Opening Br.

[19] *Id.* ¶ 4.

was not present in Delaware.[20]

Plaintiff initially alleged that "defamatory, false and private information about Plaintiff was posted to the Facebook page by members of the Teamsters"[21] which stated or implied that Plaintiff was a criminal, engaged in embezzlement and fraud, and was corrupt.[22] Plaintiff also alleged that Defendants used the Facebook page to release private documents concerning Plaintiff, some of which were a part of the confidential Settlement Agreement.[23] Plaintiff now asserts that Eby created the Facebook page, that Eby and/or Defendant Taylor are the persons who authored the allegedly defamatory posts on Facebook page and that the other Defendants worked in concert to provide information to Eby or Defendant Taylor for posting to the Facebook page, which included documents that were to remain confidential pursuant to the Settlement Agreement.[24]

On April 7, 2015, Plaintiff filed a complaint against Teamsters Local 326, the Individual Teamsters Defendants and Defendant Taylor, alleging False Light

---

[20] *Id.* ¶¶ 5, 7–8. Defendant Taylor does not recall ever entering the State of Delaware. *Id.* ¶ 6.

[21] First Am. Compl. ¶ 2 (within "factual background").

[22] *Id.* ¶ 9 [sic—¶ 3] (within "factual background").

[23] *Id.* ¶ 3 [sic—¶ 4] (within "factual background").

[24] Pl.'s Proposed Second Am. Compl. ¶¶ 11–12. On May 19, 2016, six days after Defendant Taylor submitted his Opening Brief, Plaintiff moved for leave to file a second amended complaint and to join Travis Eby as a Defendant. This Court heard Plaintiff's Motion for Joinder and Leave to File a Second Amended Complaint on June 7, 2016, and deferred its decision until resolution of Defendant Taylor's instant motion. Accordingly, this Court has considered the arguments and allegations made by Plaintiff in his pending motion and Proposed Second Amended Complaint in ruling upon Defendant Taylor's Motion to Dismiss.

Invasion of Privacy, Defamation of Character, Tortious Interference with Business Relationship, Intentional Infliction of Emotional Distress and Breach of Contract, although the Breach of Contract claim is not alleged as to Defendant Taylor as he was not a signatory to the Settlement Agreement.[25] On May 3, 2015, four days prior to service of the Original Complaint on Defendants, Eby disclosed that he was the creator of the Facebook page.[26]

On May 26, 2015, the case was removed to the United States District Court for the District of Delaware ("District Court"). On May 27, 2015, the Teamsters Defendants filed and served their answer to Plaintiff's Complaint and moved to vacate/quash purported service upon Defendant Taylor. On June 19, 2015, counsel for the parties filed their Stipulation and Order Granting Leave for Plaintiff to File First Amended Complaint, which was granted by the District Court on June 24, 2015. On July 2, 2015, the Teamsters Defendants filed their Answer to Plaintiff's First Amended Complaint. On July 14, 2015, the Clerk of the District Court issued a Summons to serve Defendant Taylor, which was received by Defendant Taylor on July 27, 2015.

On August 14, 2015, Defendant Taylor filed a Motion to Dismiss in the District Court based on lack of personal jurisdiction. The parties completed briefing but on January 28, 2016, the case was remanded back to this Court by

---

[25] *See generally* Settlement Agreement, Ex. B to Original Compl.

[26] "Bring the Teamsters to Fedex Freight" May 3, 2015 Facebook Post, Ex. C to Def.'s Reply Br.

stipulation of the parties. On April 24, 2016, Defendant Taylor renewed his Motion to Dismiss in this Court and simultaneously therewith filed his Notice of Lodging of the relevant pleadings from the District Court. On May 13, 2016, Defendant Taylor submitted his Opening Brief in support of his Motion to Dismiss based on lack of personal jurisdiction.

On May 19, 2016, Plaintiff filed a Motion for Joinder and Leave to File a Second Amended Complaint, requesting to join Eby as a Defendant based upon Eby's assertions that he created the "Bring the Teamsters to Fedex Freight" Facebook page. Plaintiff's Proposed Second Amended Complaint includes additional claims against Eby as well as a claim of Civil Conspiracy against Eby, the Teamsters Defendants and Defendant Taylor.[27] Defendants submitted their opposition to Plaintiff's motion on May 31, 2016.

On June 3, 2016, Plaintiff submitted his Answering Brief opposing Defendant Taylor's Motion to Dismiss. On June 7, 2016, this Court heard Plaintiff's Motion for Joinder and Leave to File a Second Amended Complaint but deferred its ruling until resolution of Defendant Taylor's instant motion. On June 13, 2016, Defendant Taylor submitted his Reply Brief in support of his Motion to Dismiss and this Court heard oral arguments on July 8, 2016.

Defendant Taylor argues that Plaintiff fails to allege a factual basis sufficient

---

[27] Plaintiff's Proposed Second Amended Complaint also includes a claim of Direct or Vicarious Liability against Teamsters Local 326; although it references Defendant Taylor, it is not alleged against him. *See* Pl.'s Proposed Second Am. Compl. ¶¶ 70–73.

to support this Court's assertion of personal jurisdiction over Defendant Taylor. Specifically, Defendant Taylor argues that 10 *Del. C.* § 3104 does not provide a statutory basis for jurisdiction over his person in light of his complete lack of contact with the State of Delaware. Defendant further argues that Plaintiff's "conspiracy theory of personal jurisdiction"—which would permit this Court's exercise of specific or general jurisdiction over Defendant Taylor by imputing his co-conspirators' Delaware-based contacts to him—must be rejected because Plaintiff fails to set forth sufficiently specific factual evidence demonstrating that Defendant Taylor was a co-conspirator to the Individual Teamsters Defendants in a substantial act or effect occurring in Delaware that resulted in harm to Plaintiff. Lastly, he argues that even if the Court accepts Plaintiff's arguments under the "conspiracy theory of personal jurisdiction" or otherwise finds jurisdiction over Defendant Taylor's person pursuant to § 3104, the exercise of such jurisdiction would still violate Due Process.

Having considered the parties' respective briefing and oral arguments, the matter is ripe for consideration.

## STANDARD OF REVIEW

On a motion to dismiss pursuant to Superior Court Civil Rule 12(b)(2) for lack of personal jurisdiction over a defendant, the plaintiff "bear[s] the burden to

9

articulate a non-frivolous basis for this court's assertion of jurisdiction." [28] Although the factual record is read in the light most favorable to the plaintiff in ruling on the motion, "the plaintiff must plead specific facts and cannot rely on mere conclusory assertions."[29] "A court cannot grant a motion under Rule 12(b)(2) simply by accepting the well pleaded allegations of the complaint as true, because the pleader has no obligation to plead facts that show the amenability of the defendant to service of process."[30] The plaintiff can satisfy his or her burden on a Rule 12(b)(2) motion "by making a *prima facie* showing that jurisdiction is conferred by statute."[31]

In making the determination of whether exercise of the Court's jurisdiction is proper, the Court's duty is two-fold: "[f]irst, it must determine whether jurisdiction is appropriate under Delaware's long arm statute. And, second, it must evaluate whether asserting such jurisdiction would offend the Due Process Clause of the Constitution."[32] Importantly, legal questions presented by a motion to

---

[28] *IM2 Merch. & Mfg., Inc. v. Tirex Corp.*, 2000 WL 1664168, at *4 (Del. Ch. Nov. 2, 2000) (citing *Hart Holding Co. Inc. v. Drexel Burnham Lambert Inc.*, 593 A.2d 535, 539 (Del. Ch. 1991)). *See also In re Asbestos Litig. (Anderson)*, 2015 WL 556434, at *3 (Del. Super. Jan. 30, 2015); *Boone v. Oy Partek Ab*, 724 A.2d 1150, 1154 (Del. Super. 1997), *aff'd*, 707 A.2d 765 (Del. 1998); *Greenly v. Davis*, 486 A.2d 669, 670 (Del. 1984); *Harmon v. Eudaily*, 407 A.2d 232, 233 (Del. Super. 1979), *aff'd*, 420 A.2d 1175 (Del. 1980).

[29] *Mobile Diagnostic Grp. Holdings, LLC v. Suer*, 972 A.2d 799, 802 (Del. Ch. 2009).

[30] *Hart Holding Co.*, 593 A.2d at 538.

[31] *McKamey v. Vander Houten*, 744 A.2d 529, 531 (Del. Super. 1999).

[32] *Boone*, 724 A.2d at 1154–55.

dismiss for lack of personal jurisdiction—such as "whether that connection constitutes 'doing business,' whether it satisfies some aspect of a long-arm statute, or whether the assertion of personal jurisdiction conforms to conventional notions of fair play and substantial justice"—cannot be answered until the Court determines the underlying facts regarding "the connection the defendant has had, directly or indirectly, with the forum."[33]

## ANALYSIS

### A. Plaintiff Fails to Establish a Non-Frivolous Basis for this Court's Assertion of Personal Jurisdiction over Defendant Taylor.

Because Defendant Taylor seeks dismissal based on lack of personal jurisdiction, Plaintiff must articulate a non-frivolous basis for this court's assertion of jurisdiction by providing specific facts regarding Defendant Taylor's amenability to this Court's assertion of jurisdiction. Plaintiff argues the existence of sufficient facts for this Court to find that it has specific jurisdiction over Defendant Taylor,[34] who should have reasonably anticipated being haled into this Court given the degree of interactivity on the Facebook page, the content targeting

---

[33] *Hart Holding Co.*, 593 A.2d at 538.

[34] Defendant Taylor originally argued that neither general nor specific jurisdiction was sustainable. *See* Def.'s Opening Br. at 8–13. Although Plaintiff argues that either general or specific jurisdiction can be imputed based on Defendant Taylor's co-conspirators' contacts with Delaware, Plaintiff alternatively argued that specific jurisdiction could be maintained over Defendant Taylor even if the Court otherwise rejected the "conspiracy theory of personal jurisdiction." However, Plaintiff did not argue that general jurisdiction could be maintained over Defendant Taylor independent of the "conspiracy theory." *See* Pl.'s Answering Br. at 16–21. Accordingly, this Memorandum Opinion and Order addresses only whether this Court can permissibly exercise specific jurisdiction over Defendant Taylor's person independent of the "conspiracy theory of personal jurisdiction" (which considers both specific and general jurisdiction).

11

Plaintiff and a Delaware audience, and the repeated divulging of Delaware-specific content in the allegedly tortious Internet postings on the Facebook Page. This Court disagrees.

"In order for personal jurisdiction to exist, the plaintiff must adequately satisfy two requirements: statutory and constitutional."[35] Under the statutory requirement, the Court must determine "whether there is a statutory basis for jurisdiction pursuant to the forum's long-arm statute."[36] The burden is on "the plaintiff to make a specific showing that the Delaware court has jurisdiction under the long-arm statute."[37] If the Court finds a statutory basis for jurisdiction based on one or more of the provisions in the long-arm statute, the Court must then determine, under the constitutional requirement, "whether the exercise of jurisdiction under that statute comports with due process."[38]

Delaware's long-arm statute, codified at 10 *Del. C.* § 3104, provides in pertinent part:

> As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, ... who in person or through an agent:
>
> . . .

---

[35] *Kabbaj v. Simpson*, 2013 WL 2456108, at *4 (D. Del. June 6, 2013) [hereinafter *Kabbaj I*], aff'd, 547 Fed. Appx. 84 (3d Cir. 2013).

[36] *Id.*

[37] *Greenly*, 486 A.2d at 670.

[38] *Kabbaj v. Simpson*, 547 Fed. Appx. 84, 86 (3d Cir. 2013) [hereinafter *Kabbaj II*].

(3) Causes tortious injury in the State by an act or omission in this State[.][39]

Delaware's long-arm statute is divided into two main categories: general and specific jurisdiction. The parties agree that the focus of this analysis is on whether this Court has specific jurisdiction over Defendant Taylor.[40] "Specific jurisdiction is at issue when the plaintiff's claims arise out of acts or omissions that take place in Delaware."[41]

To satisfy the requirements of specific personal jurisdiction under the statute, "the conduct of the defendant must be directed at the residents of Delaware and the protections of Delaware laws. Acts outside the state, however, do not meet the requirements of specific jurisdiction."[42] Section § 3104(c)(3) is a specific jurisdiction provision which "requires the tortious activity to occur in Delaware" and authorizes personal jurisdiction over a non-resident actor who "cause[s] a tortious injury within the state by conduct occurring in the forum."[43]

Plaintiff does not allege that Defendant Taylor was ever physically present in Delaware, let alone that the Facebook posts were posted while Defendant Taylor was in Delaware. There is no evidence that Defendant Taylor ever "acted" in

---

[39] 10 *Del. C.* § 3104(c).

[40] *See supra* note 34.

[41] *Boone*, 724 A.2d at 1155.

[42] *Kabbaj I*, 2013 WL 2456108, at *5 (footnote omitted).

[43] *Id.*

Delaware.[44] Instead, Plaintiff's argument concerning this Court's jurisdiction over Defendant Taylor relies on the content of the Facebook posts.

In *Kabbaj v. Simpson*, the United States District Court for the District of Delaware ("District Court") was presented with a somewhat similar set of circumstances where a plaintiff sued for defamation (among other causes) in connection with allegedly defamatory statements made via the defendant's websites, blogs and emails.[45] The plaintiff in *Kabbaj*, like Plaintiff here, attempted to invoke § 3104(c)(3). The District Court rejected this argument, noting that "[f]or [§ 3104(c)(3)] to operate, a defendant or his agent must be present at the time of the tortious conduct for the act to be considered committed in Delaware."[46] The District Court further found that,

> *In the absence of any indication that defendant posted his writings while in Delaware, § 3401(c)(3) does not apply.* As recognized under Delaware law, the posting of remarks, comments, opinions, statements or other electronic messages on the Internet, even assuming they are defamatory, is insufficient to satisfy the minimum contacts for the court to exercise personal jurisdiction. The mere ability to access the postings from one's computer does not confer personal jurisdiction, even though that access is available in Delaware.[47]

---

[44] *See supra* text accompanying notes 11–20.

[45] *Kabbaj I*, 2013 WL 2456108, at *3.

[46] *Id.* at *7.

[47] *Id.* (emphasis added) (footnotes omitted).

This Court finds that Plaintiff fails to distinguish *Kabbaj* from the instant matter. As in *Kabbaj*, Plaintiff has no evidence and does not allege that the posts—assuming they were actually written by Defendant Taylor—were "initiated" while Defendant Taylor was in Delaware.[48]

The *Kabbaj* court relied on a case also involving facts similar to the instant matter, *Kane v. Coffman*.[49] In *Kane*, the plaintiff alleged that the defendant had defamed and threatened plaintiff via a message posted on an internet bulletin board.[50] Similar to Plaintiff's assertions in the instant matter, the plaintiff in *Kane* asserted specific personal jurisdiction pursuant to § 3104(c)(3) and argued that the "posting of the electronic message by [the defendant] [w]as tantamount to his causing injury within the state."[51] The plaintiff argued that even though the act about which she complained was not committed in Delaware and the defendant had never conducted business in the state, "the message posted by [the defendant] on the internet bulletin board was intended to be received by her in Delaware" and analogized "the posting of this message to [the defendant] personally delivering it to her in the State of Delaware since she viewed the same on her computer here."[52]

---

[48] *Id.* at *6.

[49] 2001 WL 914016 (Del. Super. Aug. 10, 2001).

[50] *Id.* at *1.

[51] *Id.* at *5.

[52] *Id.* at *2.

15

The *Kane* court disagreed with the plaintiff's position and explained that unlike the personal delivery of a message, the posting of an electronic message does not require a physical presence in Delaware in order to deliver that message.[53] Notably, the court held that "the contention that the posting of an electronic message on an internet bulletin board is sufficient [to confer jurisdiction under Delaware's long-arm statute] is unsupported by any legal authority or logic."[54] Plaintiff unsuccessfully attempts to do the same in the instant matter.

Plaintiff fails to distinguish the holding in *Kane* from the instant matter. Furthermore, the cases relied on by Plaintiff as supporting his argument that specific jurisdiction can be based on some particular Internet activity are inapposite; those cases all involved the respective defendant's use of the internet or internet bulletin boards to conduct commercial activity.[55] In the instant matter, Plaintiff has not alleged that Defendant Taylor was engaged in commercial activity within Delaware or on the Facebook page. As such, this Court finds that Plaintiff fails to articulate a non-frivolous basis for this Court's assertion of personal jurisdiction over Defendant Taylor.

---

[53] *Id.* at *5.

[54] *Id.*

[55] *See TriStrata Tech., Inc. v. Emulgen Labs., Inc.*, 537 F. Supp. 2d 635, 640–41 (D. Del. 2008) (involving defendant's use of internet and email broadcasts to market and solicit orders for its products); *Blumenthal v. Drudge*, 992 F. Supp. 44 (D.D.C. 1998) (involving defendant's use of internet forum to solicit and receive contributions from residents of the forum); *Kloth v. S. Christian Univ.*, 494 F. Supp. 2d 273 (D. Del. 2007) (involving defendant's use of website that advertised its "distance learning" program), *aff'd*, 320 Fed. Appx. 113 (3d Cir. 2008), and *aff'd*, 320 Fed. Appx. 113 (3d Cir. 2008).

Having determined that there is no statutory basis to exercise specific jurisdiction over Defendant Taylor, this Court will nevertheless examine whether the exercise of such jurisdiction would offend Due Process. Due Process allows this Court to exercise specific jurisdiction over a nonresident defendant when "minimum contacts" exist between the defendant and the forum and doing so is consistent with "traditional notions of fair play and substantial justice." [56] Specifically, "minimum contacts must have a basis in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'"[57]

Viewing the facts in a light most favorable to Plaintiff, this Court finds that even if a basis for the assertion of specific jurisdiction over Defendant Taylor existed, the exercise of such jurisdiction would offend Due Process. As previously discussed, Plaintiff fails to provide any specific factual evidence that Defendant Taylor was the author of these postings, let alone that he authored and posted these allegedly defamatory posts while in Delaware.

While Plaintiff, a Delaware resident, was often a topic of conversation on the Facebook page, and there may have been Delaware-specific content posted

---

[56] *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 286 (1980) (citing *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)).

[57] *Asahi Metal Indus. Co., Ltd. v. Super. Ct. of California, Solano Cty.*, 480 U.S. 102, 109 (1987) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

thereon,[58] this is insufficient to confer personal jurisdiction over Defendant Taylor where the record is devoid of any evidence that the writings were posted, by him or anyone else, *while in Delaware.* Based on the record in this case, it cannot be said that Defendant Taylor's conduct and connection with Delaware were such that he should reasonably have anticipated being haled into court here.[59] Even if there was any evidence to show that Defendant Taylor had authored the postings, "an internet posting made from outside the state and received by a party inside the state … fails to provide sufficient minimum contacts" to allow this Court to exercise specific jurisdiction over Defendant Taylor pursuant to § 3104(c)(3).[60]

Since this Court finds that Plaintiff fails to articulate a non-frivolous basis for this Court's assertion of personal jurisdiction over Defendant Taylor, it next turns to Plaintiff's alternative basis for personal jurisdiction over Defendant Taylor: the "conspiracy theory of personal jurisdiction."

---

[58] The following is a summary of the Delaware-specific Facebook posts noted and relied upon by Plaintiff: (1) a hyperlink to an article about Plaintiff by the Delaware News Journal (January 6, 2015); (2) a resignation letter by Plaintiff, containing Plaintiff's residential address in Wilmington, Delaware (January 7, 2015); (3) a filing with the Delaware State Election Commissioner in respect of Teamsters Local 326 PAC, which was conspicuously titled, "Delaware Elections" (January 8, 2015); (4) a Protection From Abuse court document about Plaintiff, which was conspicuously titled, "Family Court of the State of Delaware" / "500 N. King Street" / "Wilmington, DE 19801." (January 8, 2015); (5) a police report from a Delaware police agency (January 9, 2015); (6) a letter by Individual Teamsters Defendant John J. Ryan, Sr., which conspicuously contains the business letterhead for Teamsters Local 326 and its headquarters, "451 E. New Churchmans Road" / "New Castle, Delaware 19720." (January 9, 2015). *See* Pl.'s Answering Br. at 13–14, 19; Ex. A to Original Compl.

[59] *See World-Wide Volkswagen,* 444 U.S. at 297.

[60] *Kane,* 2001 WL 914016, at *5. *See also Kabbaj I,* 2013 WL 2456108, at *7.

18

## B. Plaintiff Fails to Establish Personal Jurisdiction over Defendant Taylor Based on the "Conspiracy Theory of Personal Jurisdiction."

Plaintiff alternatively asserts that even if specific jurisdiction over Defendant Taylor cannot be established based on his own contacts—or lack thereof—with Delaware, general jurisdiction and/or specific jurisdiction can otherwise be maintained by imputing his co-conspirators' contacts with Delaware, under the "conspiracy theory of personal jurisdiction."

The Delaware Supreme Court first adopted the "conspiracy theory of personal jurisdiction" in *Istituto Bancario Italiano SpA v. Hunter Engineering Company*.[61] The theory "rests in part upon the legal premise that the acts of a conspirator are imputed to all the other co-conspirators."[62] Under the conspiracy theory of personal jurisdiction,

> [A] conspirator who is absent from the forum state is subject to the jurisdiction of the court, assuming he is properly served under state law, if the plaintiff can make a factual showing that: (1) a conspiracy [to cause tortious injury] existed; (2) the defendant was a member of that conspiracy; (3) a substantial act or substantial effect in furtherance of the conspiracy occurred in the forum state; (4) the defendant knew or had reason to know of the act in the forum state or that acts outside the forum state would have an effect in the forum state; and (5) the act in, or effect on, the forum state was a direct and foreseeable result of the conduct in furtherance of the conspiracy.

---

[61] 449 A.2d 210 (Del. 1982).

[62] *Id.* at 225.

Thus, a defendant who has so voluntarily participated in a conspiracy with knowledge of its acts in or effects in the forum state can be said to have purposefully availed himself of the privilege of conducting activities in the forum state, thereby fairly invoking the benefits and burdens of its laws. It can further be said that such participation is a substantial contact with the jurisdiction of a nature and quality that it is reasonable and fair to require the defendant to come and defend an action there. Additional contacts would of course make even more equitable the jurisdiction.[63]

Our Supreme Court has thus set out the appropriate burden of proof that must be satisfied for Plaintiff to prevail under this theory;[64] it adopted a "strict test" requiring a plaintiff to make a factual showing as to each enumerated factor.[65] Accordingly, the conspiracy theory of personal jurisdiction "is very narrowly construed. Plaintiffs must assert specific factual evidence, not conclusory allegations, to show that the non-resident defendants were conspirators in some wrongful act resulting in harm to Delaware entities or their owners in order for the Court to exercise jurisdiction over them."[66]

Plaintiff argues that where Defendant Taylor conspired with Individual

---

[63] *Id.* (citation omitted).

[64] *Id.* at 223–25 (rejecting "simple" version of conspiracy test applied in cases such as *Maricopa Cty. v. American Petrofina, Inc.*, 322 F.Supp. 467 (N.D.Ark. 1971) and *Mandelkorn v. Patrick*, F.Supp. 692 (D.D.C. 1973); adopting version of conspiracy test requiring "a more extensive showing" and "higher burden of proof" applied in *Leasco* cases, 319 F.Supp. 1256 (S.D.N.Y. 1970), 468 F.2d 1326 (2d Cir. 1972), 68 F.R.D. 178 (S.D.N.Y. 1974), and *Gemini Enterprises v. W.F.M.Y. Tele. Corp.*, 470 F.Supp. 559 (M.D.N.C. 1979)).

[65] *Id.* at 225.

[66] *Crescent/Mach I Partners, L.P. v. Turner*, 846 A.2d 963, 976 (Del. Ch. 2000).

Teamsters Defendants and Teamsters Local 326 to cause tortious injury to Plaintiff in Delaware, Individual Teamsters Defendants' contacts with Delaware can be imputed to Defendant Taylor as a matter of law through the "conspiracy theory of personal jurisdiction." Unfortunately for Plaintiff, this argument has no merit as Plaintiff fails to meet the theory's requirements.

As to the first factor, Plaintiff fails to provide a sufficient factual basis to reasonably infer that a conspiracy to tortiously injure Plaintiff existed among Defendants. Plaintiff asks this Court to imply a conspiracy based solely on the existence of the Facebook page, the contents of some of the posts on the Facebook page, the Settlement Agreement and the allegations in his Proposed Second Amended Complaint, which is still pending before this Court. Plaintiff has not provided any other specific factual evidence, let alone evidence of a conspiracy, that would permit this Court to reasonably infer a conspiracy existed to tortiously injure Plaintiff.

Importantly, Plaintiff also fails to satisfy the second factor under this theory concerning Defendant's involvement in the conspiracy. Specifically, Plaintiff asks this Court to make inferences that a conspiracy existed based on the half-dozen comments on the Facebook page thanking a "Bob" or a "Bob Taylor" (i.e., Bob should be thanked for either authoring the postings or for supplying another author with information that was posted). Plaintiff asks this Court to make this leap

21

without any specific factual evidence linking Defendant Taylor as an authorizer and/or administrator who controls the contents of the Facebook page.

Viewing all factual disputes in a light most favorable to Plaintiff, this Court finds that Plaintiff fails to provide specific factual evidence that a conspiracy to tortiously injure Plaintiff existed and that Defendant Taylor was a part of it. Accordingly, Plaintiff cannot satisfy the requirements of *Istituto Bancario*. Personal jurisdiction cannot be exercised over Defendant Taylor based on the imputed actions of his alleged co-conspirators and their contacts with Delaware.

## CONCLUSION

Having considered 10 *Del. C.* § 3104, Delaware precedent and Plaintiff's First Amended Complaint, Proposed Second Amended Complaint, arguments and exhibits, this Court finds that no basis exists for the assertion and exercise of personal jurisdiction over Defendant Taylor. Plaintiff fails to establish a non-frivolous basis for this Court's assertion of specific jurisdiction over Defendant Taylor and cannot otherwise establish personal jurisdiction based on the "conspiracy theory of personal jurisdiction." Accordingly, for the reasons set forth above, Defendant Taylor's Motion to Dismiss is **GRANTED** without prejudice.

**IT IS SO ORDERED.**

Judge Vivian L. Medinilla

oc:    Prothonotary

22