**SUPERIOR COURT**
OF THE
**STATE OF DELAWARE**

VIVIAN L. MEDINILLA
JUDGE

LENONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 10400
WILMINGTON, DE 19801-3733
TELEPHONE (302) 255-0626

March 28, 2017

R. Joseph Hrubiec, Esquire
Law Office of Albert M. Greto
715 N. Tatnall Street
Wilmington, DE 19801

Jeffrey M. Weiner, Esquire
Law Offices of Jeffrey M. Weiner, P.A.
1332 King Street
Wilmington, DE 19801

    **Re:** *Michael Ciabattoni v. Teamsters Local 326, et al.*
       *Case No.: N15C-04-059 VLM*

Dear Counsel:

This is the Court's ruling on Defendant Travis Eby ("Eby")'s Motion to Dismiss for lack of personal jurisdiction and for failure to state a claim upon which relief may be granted. After considering the parties' positions in the filings and at oral argument on the Motion, Eby's Motion to Dismiss is **GRANTED** for lack of personal jurisdiction.

## Factual and Procedural Background

### *Factual Background*[1]

Plaintiff Michael Ciabattoni ("Plaintiff") alleges that Defendants, Teamsters Local 326, its officers, and Eby, engaged in false light invasion of privacy (Count

---

[1] The factual and procedural background in this case is considerable in size and only that which is necessary to this opinion is set out below. The Court's August 22, 2016 Memorandum Opinion and Order provides greater background surrounding this case. *See Ciabattoni v. Teamsters Local 326*, 2016 WL 4442277 (Del. Super. Aug. 22, 2016) (granting Defendant Robert Taylor's motion to dismiss for lack of personal jurisdiction).

I), defamation of character (Count II), tortious interference with business relationship (Count III), intentional infliction of emotional distress (Count IV), breach of contract (Count V), and civil conspiracy to commit the foregoing counts (Count VI).[2] The suit arises out of a Facebook Page and associated posts wherein the Teamsters Local 326 officers ("Individual Teamsters Defendants"), in an alleged conspiracy with Eby, posted defamatory comments and disclosed confidential documents concerning Plaintiff to others who accessed the Facebook Page.[3] Plaintiff demands compensatory and punitive damages.

The allegations stem from Plaintiff's "voluntary retirement" from Teamsters Local 326.[4] Plaintiff, a former Teamsters vice president, and the Individual Teamsters Defendants—officers/directors of Teamsters Local 326—entered into a confidential settlement agreement whereby Plaintiff would pay back allegedly embezzled funds in the amount of $7,000 and "voluntarily resign" in exchange for Defendants dropping administrative charges against Plaintiff and recommending to State authorities that the parties had resolved the charges against Plaintiff.[5]

After the Settlement Agreement, entered into in late 2012, a Delaware newspaper article profiled Plaintiff's avoidance of criminal charges related to this same conduct. Shortly before the newspaper article, Eby—a Harrisburg, Pennsylvania resident and FedEx Freight employee—created a Facebook Page entitled "Bring the Teamsters to FedEx Freight."[6] The Page was created with the purpose of promoting unionization efforts at FedEx Freight under the Teamsters' auspices.[7] The Facebook Page was publicly accessible by other Facebook users and members of the public alike in January 2015.[8]

After the article surfaced and was posted on the Facebook Page, numerous comments were made by Facebook users who clearly had some connection to the

---

[2] *See generally* Second Amended Complaint (filed Nov. 11, 2016) [hereinafter "Complaint"].

[3] Complaint at ¶ 11.

[4] *See Ciabattoni*, 2016 WL 4442277, at *1-2.

[5] Complaint at Exhibit B.

[6] Complaint at ¶ 10.

[7] Complaint at ¶ 9.

[8] *See id.*

unionization effort. These users posted messages expressing their considerable displeasure towards Plaintiff and the posts conveyed a desire to uncover more information about his alleged improprieties.[9]

To that end, Eby, in addition to creating and/or administering the Facebook Page, allegedly posted two comments of particular note. The first, on January 7, 2015, stated: "Many more documents to come on this clown."[10] The second, on January 8, 2015, declared: "The grand finally [sic] of all bomb shells [sic] on this tool to be coming soon."[11] The posts are attributed to the Facebook Page and not any single author in particular. Notwithstanding the latter, Plaintiff asserted at oral argument that it was reasonable to infer that Eby posted them because he is the only identified creator/administrator of the Facebook Page.[12]

Additionally, Plaintiff alleges that other Individual Teamsters Defendants, including signatories of the Settlement Agreement, allegedly posted confidential information regarding the Agreement on the Page. Of particular relevance to this Motion, however, are two documents that were posted to the Facebook Page: (1) Plaintiff's August 5, 2012 Delaware Family Court Protection from Abuse ("PFA") Order; and (2) an August 21, 2012 letter, sent from John J. Ryan, Sr. of the General Teamsters Local Union to Plaintiff accusing him of "wiretapping" the Local Union Hall.[13] These documents were allegedly sent to the Teamsters Local and posted by the Individual Teamsters Defendants to the Facebook Page, or sent to Eby for posting.

### *Procedural Background*

Plaintiff's Second Amended Complaint was filed on November 28, 2016 after the Court granted Plaintiff's motion for leave to amend the original Complaint. Defendants subsequently answered the Second Amended Complaint and Defense counsel entered his appearance for Eby. Eby thereafter filed this Motion to Dismiss on January 13, 2017 on the basis lack of personal jurisdiction

---

[9] *See* Complaint at Exhibit A (transcript of comments on Facebook Page).

[10] Complaint at ¶ 18.

[11] Complaint at ¶ 19. *See also* Complaint at Exhibit A.

[12] When prompted by this Court, Defense counsel conceded at oral argument that there is no evidence that Eby was the only administrator of the Facebook page.

[13] Complaint at Exhibit A, 12, 15.

and Rule 12(b)(6). The Court has previously granted a similar motion to dismiss on personal jurisdiction grounds for Defendant Robert Taylor, decided on August 22, 2016.[14]

Eby's opening brief was filed on January 23, 2017. Plaintiff filed his response on February 8, 2017. Eby filed a reply brief on February 17, 2017. Oral arguments on the Motion took place on March 8, 2017. The matter is now ripe for decision.[15]

## Contentions of the Parties

Eby argues that: (1) Delaware's long-arm statute, 10 *Del. C.* § 3104, does not provide for either specific or general jurisdiction over Eby; (2) even if it did, the exercise of jurisdiction over Eby would violate due process; and (3) Eby cannot be brought into Delaware under the conspiracy theory of personal jurisdiction because Plaintiff cannot meet the established five-part test for this theory without specific factual evidence of Eby's alleged involvement in a conspiracy.

Plaintiff concedes the issue of specific jurisdiction in his response and places all his eggs in one basket: the conspiracy theory of personal jurisdiction. Arguing that the five-part test is met here, Plaintiff proceeds to halfheartedly assert that Eby could also be brought in under specific or general personal jurisdiction pursuant to 10 *Del. C.* § 3104(c)(3)-(4) as an agent of the other Defendants, over whom the Court has personal jurisdiction.[16]

## Standard of Review

On a motion to dismiss pursuant to Superior Court Civil Rule 12(b)(2) for

---

[14] *See Ciabattoni v. Teamsters Local 326*, 2016 WL 4442277 (Del. Super. Aug. 22, 2016).

[15] Prior to the oral argument on the Motion, Plaintiff filed an untimely motion to stay the oral argument so counsel could take the deposition of Eby, hoping to then supplement his response in opposition to the Motion to Dismiss. The Court denied the Motion at a hearing on March 7, 2017. Plaintiff's request for an *in camera* review of Defendant Eby's legal fees was also denied as improperly raised.

[16] Because the Court holds that there is no personal jurisdiction over Eby under the conspiracy theory of personal jurisdiction, this Court does not address the specific personal jurisdiction arguments made by Plaintiff. However, the Court notes that identical arguments on this issue were addressed in its August 22, 2016 ruling as to Defendant Taylor.

lack of personal jurisdiction over a defendant, the plaintiff "bear[s] the burden to articulate a non-frivolous basis for this court's assertion of jurisdiction."[17] Although the factual record is read in the light most favorable to the plaintiff in ruling on the motion, "the plaintiff must plead specific facts and cannot rely on mere conclusory assertions."[18] "A court cannot grant a motion under Rule 12(b)(2) simply by accepting the well pleaded allegations of the complaint as true, because the pleader has no obligation to plead facts that show the amenability of the defendant to service of process."[19] The plaintiff can satisfy his or her burden on a Rule 12(b)(2) motion "by making a *prima facie* showing that jurisdiction is conferred by statute."[20]

In making the determination of whether personal jurisdiction exists, the Court's duty is two-fold: "First, it must determine whether jurisdiction is appropriate under Delaware's long arm statute. And, second, it must evaluate whether asserting such jurisdiction would offend the Due Process Clause of the Constitution."[21] Importantly, legal questions presented by a motion to dismiss for lack of personal jurisdiction—such as "whether that connection constitutes 'doing business,' whether it satisfies some aspect of a long-arm statute, or whether the assertion of personal jurisdiction conforms to conventional notions of fair play and substantial justice"—cannot be answered until the Court determines the underlying facts regarding "the connection the defendant has had, directly or indirectly, with the forum."[22]

---

[17] *IM2 Merch. & Mfg., Inc. v. Tirex Corp.*, 2000 WL 1664168, at *4 (Del. Ch. Nov. 2, 2000) (citing *Hart Holding Co. Inc. v. Drexel Burnham Lambert Inc.*, 593 A.2d 535, 539 (Del. Ch. 1991)). *See also In re Asbestos Litig. (Anderson)*, 2015 WL 556434, at *3 (Del. Super. Jan. 30, 2015); *Boone v. Oy Partek Ab*, 724 A.2d 1150, 1154 (Del. Super. 1997), *aff'd*, 707 A.2d 765 (Del. 1998); *Greenly v. Davis*, 486 A.2d 669, 670 (Del. 1984); *Harmon v. Eudaily*, 407 A.2d 232, 233 (Del. Super. 1979), *aff'd*, 420 A.2d 1175 (Del. 1980).

[18] *Mobile Diagnostic Grp. Holdings, LLC v. Suer*, 972 A.2d 799, 802 (Del. Ch. 2009).

[19] *Hart Holding Co.*, 593 A.2d at 538.

[20] *McKamey v. Vander Houten*, 744 A.2d 529, 531 (Del. Super. 1999).

[21] *Boone*, 724 A.2d at 1154–55.

[22] *Hart Holding Co.*, 593 A.2d at 538.

## Discussion

Eby is a Pennsylvania resident. He is employed as a FedEx Freight driver and drives back and forth between Middletown, Pennsylvania to a railroad yard located seven miles away. Defendant has only been to Delaware a few times—for the Firefly Music Festival and two shipments back and forth for FedEx at the Port of Wilmington. "He has never been contracted to supply services or things in Delaware, nor does he regularly do or solicit business, engage in any persistent course of conduct or derive substantial revenue from services, or things used or consumed in Delaware."[23] Defendant has no property interest in Delaware, nor does he have an agent in Delaware.

Since Plaintiff appropriately concedes any argument grounded in traditional specific personal jurisdiction analysis, the sole issue the Court must address is whether Eby is subject to personal jurisdiction under the conspiracy theory of personal jurisdiction.

The Delaware Supreme Court first adopted the "conspiracy theory of personal jurisdiction" in *Istituto Bancario Italiano SpA v. Hunter Engineering Co.*[24] The theory "rests in part upon the legal premise that the acts of a conspirator are imputed to all the other co-conspirators."[25] Under the conspiracy theory of personal jurisdiction,

> [A] conspirator who is absent from the forum state is
> subject to the jurisdiction of the court, assuming he is
> properly served under state law, if the plaintiff can make
> a factual showing that: (1) a conspiracy [to cause tortious
> injury] existed; (2) the defendant was a member of that
> conspiracy; (3) a substantial act or substantial effect in
> furtherance of the conspiracy occurred in the forum state;
> (4) the defendant knew or had reason to know of the act
> in the forum state or that acts outside the forum state
> would have an effect in the forum state; and (5) the act

---

[23] Defendant's Opening Brief at 4.

[24] 449 A.2d 210 (Del. 1982).

[25] *Id.* at 225.

in, or effect on, the forum state was a direct and foreseeable result of the conduct in furtherance of the conspiracy.[26]

This five part test is strictly and narrowly construed: the plaintiff must make a factual showing as to each enumerated factor.[27] "Plaintiffs must assert specific factual evidence, not conclusory allegations, to show that the non-resident defendants were conspirators in some wrongful act resulting in harm to Delaware entities or their owners in order for the Court to exercise jurisdiction over them."[28]

At oral argument, Plaintiff's counsel struggled to fit the square peg of the facts surrounding Eby's putative involvement into the round hole of the five-part *Istituto Bancario* test. As a threshold matter, Plaintiff limits this analysis to three salient facts: (1) Eby admitted that he created the Facebook Page; (2) the August 5, 2012 PFA was sent to Teamsters Local; and (3) the August 21, 2012 letter that accused Plaintiff of wiretapping was "likely maintained" at Teamsters Local before its posting on the Facebook Page. The inferences Plaintiff's counsel draws from these facts move peripatetically from one factor to another.

First, *Istituto Bancario* requires Plaintiff put forth specific facts suggesting a conspiracy existed and Eby was a member of said conspiracy. The factual showing on the first two parts of this test is severely deficient. No communications have been identified between the Individual Teamsters Defendants and Eby to suggest a conspiracy existed. No prior relationship between the Individual Teamster Defendants and Eby is shown to imply a course of dealing that would heighten any inference of conspiracy. Instead, all that is alleged is that the Individual Teamsters Defendants and Eby "shared a common interest" in defaming Plaintiff.

Given the apparent lack of contact Eby has with the State, it is incumbent on Plaintiff to support his assertion of Eby's involvement in a conspiracy with some facts suggesting that a conspiracy existed. But this showing starts with a legal conclusion: Eby "engaged in ongoing communications with the other Defendants,

---

[26] *Id.* (citation omitted).

[27] *Id.* at 225.

[28] *Crescent/Mach I Partners, L.P. v. Turner*, 846 A.2d 963, 976 (Del. Ch. 2000).

7

who were located in Delaware."[29] There is no direct evidence that these putative communications ever occurred, nor is there any reasonable circumstantial evidence that they occurred. The Supreme Court's insistence that the conspiracy theory of personal jurisdiction undergo strict factual proof undermines Plaintiff's *ipso facto* argument. It strains logic to argue that, because two sets of heretofore unconnected parties, Eby and the Individual Teamster Defendants, held a "shared interest" to defame Plaintiff, this shared interest suffices to meet the first two parts of the five-part test above. Rather, this is an inference made from quixotic footing: one based on speculation and not fact.

Second, as to the third factor, Plaintiff implements a *res ipsa loquitur*-like "origination" theory: because the two documents singled out above were "likely maintained" at Defendants' office, the Individual Teamster Defendants—those who had sole control over their physical office—probably forwarded the documents to Eby out of their shared interest in defaming Plaintiff. Needless to say, this theory hardly qualifies as specific factual evidence sufficient to meet the *Istituto Bancario* test.

Finally, as to the fourth and fifth factors, Plaintiff argues that his Delaware address was prominently displayed on the two documents posted on the Facebook Page. As such, it was reasonably foreseeable that Plaintiff would suffer harm in Delaware as a result of Eby's alleged furtherance of the conspiracy to defame and tortiously injure Plaintiff. Were Plaintiff able to overcome the first three factors, he would likely be correct that the *locus delicti* was predictably Delaware; however, as discussed above, Plaintiff falls far short of meeting his burden as to the first three factors.

In this case, there exists little more than serial inferences grasping at the existence of a conspiracy between Eby and the Individual Teamster Defendants. While Eby did admit to creating the Facebook Page—a Page originally setup for broader unionization goals—the resolution of this Motion is legally and factually identical to the Court's decision with regards to Defendant Robert Taylor. Therefore, the Motion to Dismiss is **GRANTED**.

## Conclusion

After considering the parties submissions and oral arguments, Defendant Travis Eby's Motion to Dismiss for lack of personal jurisdiction is **GRANTED**.

---

[29] Complaint at ¶ 22.

8

Plaintiff has failed to demonstrate specific facts entitling him to an application of the conspiracy theory of personal jurisdiction over Eby.

**IT IS SO ORDERED.**

Sincerely,

Vivian L. Medinilla
Judge

oc:   Prothonotary
cc:   All counsel via File&Serve

9